(73 South. 698)

No. 21460.

## VIOSCA v. LANDFRIED et al.

(Dec. 11, 1916. Rehearing Denied Jan. 15, 1917.)

*(Syllabus by the Court.)*

1. LIBEL AND SLANDER ⟨⇒38(5) — DEFAMATION—PRIVILEGED COMMUNICATIONS.

Remarks uttered by a prosecuting attorney, criticizing an attorney who opposed him in the trial of a lawsuit, are not justified as within the privilege of the attorney, if the remarks were not made in the course of the judicial proceeding.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 122; Dec. Dig. ⟨⇒ 38(5).]

2. LIBEL AND SLANDER ⟨⇒42(1)—PRIVILEGED COMMUNICATIONS—PUBLISHER.

Although it is the privilege of the publisher of a newspaper to publish a fair statement of

[1]Ante, p. 589.

140 LA.—20

whatever is said and done in the course of a judicial or other public proceeding, it is not within his privilege to publish a severe personal criticism indulged in by an attorney who was engaged in a lawsuit, criticizing an attorney who was opposed to him therein, if the criticism was made before or after the judicial proceedings, and was no part thereof.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 127; Dec. Dig. ⟨⇒42(1).]

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Percy Viosca against Henry Landfried and another. From a judgment for defendants. plaintiff appeals. Judgment annulled and rendered for plaintiff.

Nicholas Callan, of New Orleans, for appellant. Robert H. Marr, of New Orleans, for appellee Item Co., Limited. M. M. Boatner and A. M. Buchmann, both of New Orleans, for appellee Landfried.

O'NIELL, J. This is an action against the defendants, in solido, for $10,000 damages for an alleged slander and libel.

The plaintiff is an attorney at law, having practiced his profession in New Orleans since 1903. The defendant Henry Landfried is an assistant district attorney for the parish of Orleans. The defendant corporation Item Company, Limited, is the proprietor of the New Orleans Item, in which the alleged libel was published.

[1] It is alleged in the plaintiff's petition that the defendant Landfried, out of the presence of the plaintiff, but in the presence and hearing of a large crowd of bystanders, including court officials, accused the plaintiff of certain unprofessional conduct and dishonest practice towards his client, and especially accused the plaintiff of attempting to "bleed" his client, one John Witherspoon, by demanding a fee of $15 to prosecute an appeal from a judgment convicting Witherspoon of petty larceny, when the plaintiff knew that the judgment could not be reversed on appeal. It is alleged that

the defendant Item Company, Limited, published the accusation, and exaggerated the statements made by Landfried, particularly by the use of prominent headlines that did not fairly express the purport of the article. The publication complained of, attached to and made a part of the petition, is as follows:

"Lawyer Viosca is Scored by Prosecuting Attorney.

"Intimated That Viosca Tried to 'Bleed' Client.

"Percy Viosca, an attorney practicing in the police courts, was severely criticized Monday by Assistant District Attorney Landfried of the First City Criminal Court.

"Mr. Landfried asserted the attorney had asked for an appeal in the case of a negro, John Witherspoon, found guilty and sentenced to two months' imprisonment by Judge Fisher, for stealing seven pounds of candy, when in his estimation there was not the slightest chance of Judge Fisher's decision being reversed.

. "'When I learned the negro, who has a large family dependent upon him, was asked for $15 more by Viosca in order to take the appeal, I placed the matter before the Judge. As a result he reduced the sentence from two months to 30 days, and the negro agreed to serve this time,' declared Landfried."

It is alleged in the petition that the accusation so uttered and published is false, defamatory, libelous, and unjustified; and that the statements were made, published, and circulated maliciously and with the intention of injuring the plaintiff in his profession, and depriving him of his good name and reputation, and bringing him into disrepute and shame and scandal.

It is alleged in plaintiff's petition that he was employed by John Witherspoon to represent and defend him, and that the plaintiff did represent and defend Witherspoon, as his counsel, in the trial of Witherspoon before Judge John B. Fisher, of the First city criminal court, on a charge of petty larceny; that, although in the opinion of the plaintiff the evidence was only circumstantial and weak, Witherspoon was convicted of the crime of petty larceny; that Witherspoon protested that he was innocent of the crime and employed the plaintiff to appeal to the criminal district court, agreeing to pay a fee of $15; that the plaintiff obtained the order of appeal, but when he offered to furnish the appeal bond found that the judge had, without notice to the attorney, reduced the sentence of imprisonment from three months to only one month, and that Witherspoon had been induced to abandon his appeal and serve the term of imprisonment; that the plaintiff immediately informed the employer of Witherspoon, from whom the plaintiff had received the fee of $15, that Witherspoon had abandoned the appeal and would submit to the sentence imposed; and that thereafter the plaintiff returned the $15 to the employer of Witherspoon.

In his answer to the petition, the defendant Landfried denied having accused the plaintiff of unprofessional conduct, of having attempted to "bleed" his client, John Witherspoon, or of having committed any dishonest practice towards his client; and denied having said that the plaintiff knew that there was no chance of reversing, on appeal, the judgment convicting Witherspoon of petty larceny. The defendant Landfried, in his answer, recited in detail what he had said and done on the occasion referred to .in the plaintiff's petition, as follows, viz.: That on the 15th of January, 1914, John Witherspoon was convicted of petty larceny by Judge John B. Fisher, of the First city criminal court, in which court the defendant performed the duties of assistant district attorney; that on the 19th of January, 1914, Witherspoon was sentenced to serve three months' imprisonment in the parish prison, and the plaintiff, as his attorney, obtained an order of appeal; that on that day, after Judge Fisher had left the bench, a deputy sheriff informed the defendant Landfried that Witherspoon, who was yet in the dock, desired to see him (Landfried); that he (Landfried) went to the dock and was informed by With-

erspoon that the plaintiff had suggested taking the appeal and wanted a fee of $15 therefor, but that he (Witherspoon) was not able nor willing to pay the fee and did not desire that the appeal be prosecuted; that he (Landfried) was then also informed by Witherspoon that the latter had a family, consisting of his wife and baby and aged mother, depending upon him for support, and that they would starve if he (Witherspoon) remained in jail three months; that Witherspoon then appealed to the defendant Landfried to aid him in having the sentence reduced; that thereupon the aged mother and the wife of Witherspoon, with a baby in her arms, came forward, appealing to him (Landfried) to assist the prisoner; that he (Landfried) then remarked that Witherspoon's attorney should have made known to him, the prosecuting attorney, and to Judge Fisher, and should have put into the record, the fact that Witherspoon had a family dependent upon him for support for the judge's guidance in fixing the sentence; that he (Landfried) then also expressed the opinion that an appeal from the judgment and sentence in Witherspoon's case to the criminal district court would be unsuccessful and useless; and that he (Landfried) in response to the request of Witherspoon and his family presented the facts to Judge Fisher, who immediately reduced the sentence of imprisonment to 30 days.

The defendant Landfried, in his answer, averred that in all of the foregoing statements and conduct he acted in his official capacity, in the performance of a public duty, in good faith and without malice, and that no liability for damages could result therefrom. He denied that any inducements were offered to Witherspoon to abandon his appeal, and averred that Witherspoon acknowledged his guilt at the time the sentence imposed upon him was reduced.

In its answer to the petition, the Item Company denied that the publication complained of was an exaggeration of the statements made by the defendant Landfried in the criminal court building on the occasion in question. The defendant Item Company averred that the publication was a fair and impartial statement of what actually took place in the First city criminal court, and, being a true recital of what was said by and between public officers in the discussion of public business, could not render the defendant, publisher of a newspaper, liable in damages for the publication. In other respects the answer of the defendant Item Company is substantially the same as that of the defendant Landfried.

The case was tried on the foregoing pleadings. Judgment was rendered against the plaintiff, rejecting his demand, and he has appealed.

The main issue presented by the pleadings was the question of fact contested by and between the defendants, whether the publication, by the Item Company, was or was not a true and accurate statement of what was said and done by the defendant Landfried. The defendant Landfried did not plead, in justification of the remarks attributed to him in the publication and in the plaintiff's petition, the privilege of a public official to make such remarks or comments in the discharge of his official duties. On the contrary, he denied having made the remarks attributed to him in the publication and in the plaintiff's petition; he denied having accused the plaintiff of attempting to "bleed" his client or of knowing that there was no chance of a reversal of the judgment when he (the plaintiff) charged $15 for appealing from it. In fact he denied having accused the plaintiff of any dishonest practice or unprofessional conduct. What the defendant Landfried in his answer admitted having said was not at all slanderous; and it was only with regard to those remarks that he pleaded the privilege of a

public officer in the discharge of official duties. He did not, in his answer, plead or contend that it was his privilege or a part of his official duty to accuse the plaintiff of unprofessional conduct or of dishonest practice of his profession as an attorney, or of attempting to "bleed" his client by accepting a fee for taking an appeal when he knew that the judgment appealed from could not be reversed.

The defendant Item Company did plead the privilege of the publisher of a newspaper to publish a true, fair, impartial, and accurate statement of the remarks made by a public officer in a discussion of public or official business; and alleged that the publication was a true, fair, impartial, and accurate statement of what was said and done in the First city criminal court on the occasion in question. Hence the defense of the Item Company depended upon the publication being a true, fair, and accurate statement of what was said by the assistant district attorney in the First city criminal court, and upon its having been said in the performance of a public or official duty.

The evidence discloses that the defendant Landfried did criticize, or, as he says, "score," the plaintiff in terms that were severe and unwarranted. The criticism, in substance and in effect, was that Mr. Viosca's professional conduct was so shameful that it had become the duty of the defendant, as an officer of the court, to put a stop to such practice, or to "break it up," as he says. Our conclusion from the evidence is that the text of the publication complained of is substantially a true statement of what Mr. Landfried said on the occasion in question. He did not, in his answer to the petition, nor in his testimony, attempt to justify the publication, either as being the truth with regard to Mr. Viosca and his professional conduct, or as being within the privilege of the defendant, as prosecuting attorney. The criticism was not made while court was in session; the remarks were addressed, not to the judge, but to the clerk, deputy sheriff, a newspaper reporter, and other bystanders.

[2] The learned counsel for the defendant Item Company contends that the publication of the remarks was within the privilege of the proprietor of the newspaper because they were repeated to the judge in his private office, in the course of the district attorney's appeal for a reduction of the sentence, which the learned counsel contends was a judicial or public proceeding. It is true the newspaper reporter testified that Mr. Landfried repeated his criticism of Mr. Viosca's conduct of the Witherspoon Case to Judge Fisher in the latter's office. But that testimony is contradicted by the testimony of the judge, the assistant district attorney, the deputy clerk, the deputy sheriff, and Witherspoon's wife, all of whom were present during Mr. Landfried's appeal to the judge for a reduction of the sentence. It is argued that these denials consist merely of the rather weak statement that "if he said this, I did not hear it." We cannot place that construction on the testimony of any of the five witnesses who testified that, according to their recollection, Mr. Landfried did not refer to Mr. Viosca or his conduct, in the appeal to the judge for a reduction of the sentence. There is no intimation in the evidence that these witnesses did not hear all that was said by the assistant district attorney in his appeal to the judge for a reduction of the sentence, and there is no reason to believe that what was said by Mr. Landfried to Judge Fisher was forgotten by them and by all who heard it, except the newspaper reporter. The preponderance of proof is that Mr. Landfried did not, in his appeal to Judge Fisher for a reduction of the sentence, indulge in any comment upon the conduct of Mr. Viosca. There was no good reason for him to do so. If the attorney had treated his client unfair-

ly, that would have been no reason for the prosecuting officer to ask for, or for the judge to grant, a reduction of the sentence. The only reason assigned by the judge for reducing the sentence of Witherspoon is contained in the memorandum made at the time, "on account of his family."

The plea of privilege invoked by the defendant Item Company is destroyed by the fact that the publication purports upon its face to be a repetition of what Mr. Landfried said after he had procured a reduction of the sentence. We refer to the last paragraph of the publication. The publication does not, in any of its expressions, purport to be a report of what transpired in a judicial proceeding.

The only reason assigned by the newspaper reporter for publishing Mr. Landfried's criticism of Mr. Viosca was that Mr. Landfried requested that it be published, saying that the conduct attributed to Mr. Viosca was becoming too general in the First city criminal court. The newspaper reporter was asked by the attorney for the Item Company: "How did you come to put it in the paper at all?" And he replied: "At the request of Mr. Landfried, who said there has been a lot of things like that coming off over there."

Our conclusion is that the criticism was published not within the privilege, but at the peril, of the publisher.

It is contended by the learned counsel for the plaintiff that the expression in the headline that the prosecuting attorney intimated that Viosca tried to "bleed" his client was not a fair or appropriate index to the second paragraph of the text of the report, viz.: "Mr. Landfried asserted the attorney had asked for an appeal in the case of a negro, John Witherspoon, * * * when, in his estimation, there was not the slightest chance of Judge Fisher's decision being reversed." If the expression, "in his estimation," was susceptible only of the meaning, "in Mr. Landfried's estimation," the headline might be considered inappropriate and misleading. It is not uncommon for two attorneys, who have opposed each other in the trial of a lawsuit, to entertain conflicting opinions as to what will be the result of an appeal from the decision rendered. The one who would take offense at the other's opinion on that question would be considered vain and thin-skinned. But it is quite a different matter for the attorney on one side of a case to accuse the attorney representing the other side of having conducted the case so as to obtain a worse result than might have been obtained, and make an appeal more necessary than it might have been, and of accepting a fee for appealing from the decision, of which he, the appellant's attorney, knew there was no chance of a reversal. That is what Mr. Landfried meant when he characterized Mr. Viosca's conduct of the Witherspoon Case as being such a shame that he considered it his duty, as an officer of the court, to break it up. It does not appear that Mr. Landfried repudiated or denied the interpretation put upon his criticism of Mr. Viosca, by the headlines in the New Orleans Item, until he filed his answer to this suit. Our opinion is that the headlines are not an exaggerated title for the publication of the criticism made by Mr. Landfried.

It is not disputed by either of the defendants that the publication complained of was injurious to the plaintiff. Our conclusion from the evidence is that it was unjustified, and that the defendants should repair the injury done to the plaintiff. The Civil Code (article 1934) provides that, in the assessment of damages arising from offenses or quasi offenses, which cannot be calculated altogether on the injured party's pecuniary loss or privation of pecuniary gain, much discretion must be left to the judge or jury.

The exercise of that wide discretion is indeed an embarrassing function that cannot be performed with accuracy. Many good reasons could be assigned for awarding a large sum in compensation if it were possible to measure the injury to a man's reputation in dollars and cents. The best reason that can be assigned for not allowing a large sum in compensation for the injury inflicted in such a case is that the judgment of vindication repairs the injury to a great extent. We have concluded to render judgment in favor of the plaintiff and against the defendants in solido for the sum of $250.

The evidence shows that Mr. Landfried was impelled by a sense of public duty and of indignation in his belief that an injustice had been done to a humble prisoner. It is with regret, therefore, that we are constrained to hold that this public official was at fault.

The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the plaintiff recover of and from the defendants, in solido, the sum of $250, and the costs of both courts.