[Civ. No. 28878. First Dist., Div. Two. Feb. 26, 1973.]

WILLIAM O. BRADLEY et al., Plaintiffs and Appellants, v. HARTFORD ACCIDENT AND INDEMNITY COMPANY et al., Defendants and Respondents.

[Civ. No. 28879. First Dist., Div. Two. Feb. 26, 1973.]

PETER ECHEVERRIA et al., Plaintiffs and Appellants, v. HARTFORD ACCIDENT AND INDEMNITY COMPANY et al., Defendants and Respondents.

(Consolidated Cases.)

820

## COUNSEL

Boccardo, Blum, Lull, Niland, Teerlink & Bell, Edward J. Niland and Stanley A. Ibler, Jr., for Plaintiffs and Appellants.

Crosby, Heafey, Roach & May, Edwin A. Heafey, Jr., and Raoul D. Kennedy for Defendants and Respondents.

## OPINION

**KANE, J.**—In this consolidated action plaintiffs appeal from the judgments of dismissal entered after respondents' demurrers to the second amended complaints ("Complaints") were sustained without leave to amend.

The present defamation action grew out of a personal injury suit brought by one Cecil Wyatt ("Wyatt action") against the Truckee-Carson Irrigation

District and one Joseph Broyles ("Broyles") to recover damages for personal injuries sustained in a water skiing accident in Nevada. Appellants William O. Bradley ("Bradley"), John Squire Drendel ("Drendel") and Peter Echeverria ("Echeverria") are all attorneys practicing law in Nevada. Bradley and Drendel represented plaintiff Wyatt, while Echeverria was the attorney for defendant Broyles in the Wyatt action. During the trial in 1968, the action against Broyles was dismissed. Thereafter the jury awarded damages in favor of Wyatt in the sum of $500,000, and the judgment was affirmed by the Nevada Supreme Court on November 25, 1968.

According to the allegations of the first causes of action of the Complaints, during and after the pendency of the Wyatt action respondents, The Hartford Accident and Indemnity Company ("Hartford") and Donald H. Dewberry ("Dewberry"), acting jointly and in conspiracy, induced one Ayala, a prisoner in a California jail, to make false and defamatory statements which, it is alleged, maliciously charged that appellants colluded and prevailed upon Broyles to give false testimony in return for which he was dropped from the Wyatt suit; and, moreover, that appellants manufactured evidence, suborned perjury, and conducted themselves in an unprofessional and illegal manner in the Wyatt action. It is further alleged that these defamatory statements were uttered orally outside of court and not in the course of any legal proceedings to third persons who had no interest in the Wyatt action. It is also affirmatively alleged that respondent Hartford, an insurance company, was not a party to, nor was Ayala either a party or a witness in, the Wyatt action, and that respondent Dewberry was not an attorney of record in that action.

The second causes of action of the Complaints allege that while the Wyatt action was pending, pursuant to a conspiracy to defame appellants, respondents caused certain extrajudicial documents, not appropriately a part of the judicial proceedings relating to the Wyatt action, to be filed with both the Nevada Supreme Court and the district court where the case was tried; that these documents were filed for the sole purpose of having the defamatory statements contained therein quoted and republished by the Nevada news media; and that in furtherance of this purpose respondents falsely and maliciously represented to certain newspaper and television reporters that the documents, which had been filed with the courts, proved that appellants had collusively prevailed upon Broyles to give false and perjured testimony favorable to Wyatt, and that appellants were therefore guilty of suborning perjury, manufacturing evidence, and conducting themselves in an unprofessional and illegal manner in the Wyatt action.

In the third and fourth causes of action of the Echeverria second amended

complaint, Broyles put forth allegations which were substantially the same as those set out in the first and second causes of action of the Complaints, with the exception that Broyles alleged that the false and malicious statements uttered were intended to charge him with the commission of the criminal offenses of perjury and fraud.

Relying on the doctrine of judicial immunity, and especially the absolute privilege provided for in Civil Code, section 47, subdivision 2, respondents demurred to the Complaints. The trial court sustained respondents' demurrers to each count without leave to amend on the general ground that none of said counts stated facts sufficient to constitute a cause of action. Thereafter, judgments of dismissal were entered in each action and the present appeal followed.

Although the trial court failed to specify whether its ruling was founded on the absolute privilege contained in Civil Code, section 47, subdivision 2, or the conditional or qualified privilege provided in subdivision 3 of the same section, it seems apparent that the trial court accepted respondents' argument that the Complaints showed upon their face that the defamatory statements had "some connection with or some relation to" a judicial proceeding, and were therefore absolutely privileged under subdivision 2. This proposition is further underlined by the circumstance that appellants alleged malice in fact in the Complaints which, under well settled law, destroyed the existence of conditional privilege which, by definition, is predicated upon defamatory statements made without malice (Civ. Code, § 47, subd. 3;[1] *Smith* v. *Hatch* (1969) 271 Cal.App.2d 39, 47 [76 Cal.Rptr. 350]; *Larrick* v. *Gilloon* (1959) 176 Cal.App.2d 408, 416 [1 Cal.Rptr. 360]). Thus, the clear issue presented is whether the allegations of the Complaints show upon their face that they are protected by absolute privilege.

Before we turn to the California rules governing the absolute privilege accorded in judicial proceedings, we call to mind that the doctrine of privileged communications rests upon public policy. ■ *The* obvious *purpose of section 47 is to afford litigants freedom of access to the courts* to secure and defend their rights without fear of being harassed by actions for defamation (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 380 [295 P.2d 405]; Veeder, *Absolute Immunity in Defamation: Judicial Proceedings* (1909) 9 Colum.L.Rev. 463, 469) *and to promote the unfettered administration of justice* even though as an incidental result it may in some instances provide an immunity to the evil-disposed and malignant slanderer (*Abbott* v.

---

[1]Civil Code, section 47, subdivision 3, provides in part that a privileged publication or broadcast is one made in a communication, *without malice,* to a person interested therein by one who is also interested.

*Tacoma Bank of Commerce* (1899) 175 U.S. 409, 411 [44 L.Ed. 217, 218, 20 S.Ct. 153]; 50 Am.Jur.2d, Libel and Slander, § 231, p. 744). Thus, the application of the absolute privilege *on certain occasions* (*Timmis* v. *Bennett* (1958) 352 Mich. 355 [89 N.W.2d 748, 752]) must be confined within narrow limits and the tendency of the courts is not to extend such limits unless the public policy upon which the privilege rests is found to exist in a new situation (*Matthis* v. *Kennedy* (1954) 243 Minn. 219 [67 N.W.2d 413]; 50 Am.Jur.2d, Libel and Slander, § 194, p. 697). Accordingly, while it has been held that there is a tendency to extend the absolute privilege to occasions where the communication is provided for and required by law, the class of occasions where the publication of defamatory matter is absolutely privileged is confined to cases in which the public service or the administration of justice requires complete immunity (*Pulliam* v. *Bond* (Mo. 1966) 406 S.W.2d 635, 640).

The California law is in complete accord with these principles. Thus, under Civil Code, section 47, subdivision 2, a publication or broadcast is privileged only on certain occasions, namely, in (1) legislative or (2) judicial proceedings, or (3) other official proceedings authorized by law. ■ Although defamatory publications made in the course of a judicial proceeding are absolutely privileged even if made with actual malice (*Albertson* v. *Raboff, supra,* at p. 379; *Gosewisch* v. *Doran* (1911) 161 Cal. 511, 513-515 [119 P. 656]), the absolute privilege attaches only to a publication that has a reasonable relation to the action, is permitted by law *and,* more importantly, *if it is made to achieve the objects of the litigation.* If these requirements are met, the publication is absolutely privileged even though made outside the courtroom and no function of the court or its officers is invoked (*Albertson* v. *Raboff, supra,* at p. 381; *Smith* v. *Hatch, supra,* at p. 45). And although the cases stress that to be privileged under subdivision 2 of section 47 the defamatory matter need not be relevant, pertinent or material to any issue before the court, *it is an absolute necessity that the publication have some connection or logical relation to the judicial proceeding* (*Thornton* v. *Rhoden* (1966) 245 Cal.App.2d 80, 90 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152]; *Jordan* v. *Lemaire* (1963) 222 Cal.App.2d 622, 625 [35 Cal.Rptr. 337]; *Lewis* v. *Linn* (1962) 209 Cal.App.2d 394, 399 [26 Cal.Rptr. 6]; Rest., Torts, §§ 585-589). The California cases likewise delineate the circle of persons to whom the judicial privilege is applicable. In harmony with Restatement of Torts, sections 585-589, the privilege has been held to extend to judges and other official officers (§ 585; *Lewis* v. *Linn, supra*); attorneys (§ 586; *Friedman* v. *Knecht* (1967) 248 Cal.App.2d 455 [56 Cal.Rptr. 540]; *Jordan* v. *Lemaire, supra*); parties (§ 587; *Albertson* v. *Raboff, supra,* at pp. 378-379); witnesses and prospective witnesses (§ 588; *Ascherman* v. *Natanson* (1972) 23 Cal.App.3d 861, 865 [100 Cal.

Rptr. 656]); and jurors (§ 589). It follows, therefore, that absolute privilege in judicial proceedings is afforded only if the following conditions have been met: the publication (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objects of the litigation; and (4) involved litigants or other participants authorized by law.

Before examining the allegations of the Complaints, we must also add that by statutory mandate the allegations of a complaint must be liberally construed with a view to substantial justice between the parties (Code Civ. Proc., § 452). This precept is fully applicable to a complaint in a defamation action (*Ingraham* v. *Lyon* (1894) 105 Cal. 254, 257 [38 P. 892]; *Farr* v. *Bramblett* (1955) 132 Cal.App.2d 36, 48 [281 P.2d 372]). In such an action, as in any type of action, the essence is fairness in pleading in order to give the defendant sufficient notice of the cause of action stated against him so that he will be able to prepare his case (*Bauer* v. *County of Ventura* (1955) 45 Cal.2d 276, 291 [289 P.2d 1]; *Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 63 [35 Cal.Rptr. 652]). A party is no longer required to plead with common law exactness, and less particularity is needed where it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy (*Simons* v. *County of Kern* (1965) 234 Cal.App.2d 362, 367 [44 Cal.Rptr. 338]; *Schessler* v. *Keck* (1954) 125 Cal.App.2d 827, 835-836 [271 P.2d 588]). It is unnecessary and improper to allege evidentiary facts (*Taylor* v. *Oakland Scavenger Co.* (1938) 12 Cal.2d 310, 317 [83 P.2d 948]; *Wise* v. *Southern Pacific Co., supra*, at p. 62), and plaintiff is not required to plead negative facts to anticipate a defense (*Stowe* v. *Fritzie Hotels, Inc.* (1955) 44 Cal.2d 416, 422 [282 P.2d 890]; *Jaffe* v. *Stone* (1941) 18 Cal.2d 146, 158-159 [114 P.2d 335, 135 A.L.R. 775]; *Farr* v. *Bramblett, supra*, at p. 48). Furthermore, where a cause of action for civil conspiracy to defame the plaintiff is pleaded, explicit details concerning the manner in which the defendants conspired to publish the alleged defamatory matter are not required. If the plaintiff's complaint sufficiently apprises the defendants of the character and type of the facts and circumstances upon which he relies to establish the conspiracy, the complaint is not vulnerable to a demurrer (*Schessler* v. *Keck, supra*, at p. 833). Finally, we note that under well recognized law, for the purpose of testing the demurrer all material and issuable facts properly pleaded must be regarded as true (*Flores* v. *Arroyo* (1961) 56 Cal.2d 492, 497 [15 Cal.Rptr. 87, 364 P.2d 263]; *Pettitt* v. *Levy* (1972) 28 Cal.App.3d 484, 487 [104 Cal.Rptr. 650]).

When construed in light of the foregoing principles, it becomes

manifest that the allegations of the Complaints totally fail to meet the legal conditions necessary to establish the absolute privilege under Civil Code, section 47, subdivision 2. Thus, a simple reading of the Complaints is persuasive that the defamatory statements were uttered outside of the court and not during any legal proceeding. It is also apparent that respondent Hartford was not a party to the action, nor was Ayala a party or a witness. It also stands uncontradicted that although respondent Dewberry was alleged to be an attorney at law there is a complete lack of indication that he was an attorney of record in the Wyatt action. It follows, therefore, that neither of the respondents were the designated persons (litigants, witnesses, attorneys, etc.) to whom the absolute privilege has been extended by law. In addition, the persons to whom the defamatory statements were allegedly communicated were also strangers (unknown third persons in the first causes of action; newspaper and television reporters in the second) who had no interest in the action.

It is conceded that, due to filing the documents with the courts, "some relationship" can be established between the publication of the contents of these documents and the action itself. However, as indicated before, the fulfillment of this requirement, standing alone, does not sustain an absolute privilege. This is particularly true in the instant case where there is nothing contained in the pleadings to suggest that the publication was made to achieve the objects of the litigation. On the contrary, it affirmatively appears in the Complaints that the documents in question were filed as a part of a conspiracy for the sole purpose of having the defamations contained therein republished by the news media, that is, to bring the defamatory matter within the protective shield of the absolute privilege and then to spread it with impunity. It is easily discernible what result would ensue should we condone such an apparent ruse by providing absolute immunity to the resourceful slanderer. The privileged defamation, now a barely tolerated exception, would gain full-fledged legitimization. All that the slanderer would have to do to avoid the consequences of his evil act would be to file the defamatory matter with the court first, then republish it as an absolutely privileged matter to the news media or to the public at large, thereby converting the litigation in the court into litigation in the press or in the street.

■ The above consideration all the more compels the conclusion that in determining whether or not the defamatory publication should be accorded an absolute privilege, *special emphasis must be laid on the requirement that it be made in furtherance of the litigation and to promote the interest of justice.* Only if this requirement has been satisfied, is it appropriate for the courts to define liberally the scope of the term "judicial proceeding" and the persons who should be regarded as litigants or other participants.

The cases are in accord with this proposition. Thus, in *Pettitt* v. *Levy, supra,* in a proceeding before the city planning commission, the absolute privilege was extended to the interested members of the public because the possible opposition to granting a variance was deemed to be in the interest of justice (28 Cal.App.3d at p. 488; to the same effect see: *Whelan* v. *Wolford* (1958) 164 Cal.App.2d 689 [331 P.2d 86]). The requirement that the publication must be made in the furtherance of the action in order to be absolutely privileged is one of the main distinguishing factors between the case at bench and *Smith* v. *Hatch, supra,* upon which respondents place their main reliance. In that case there was litigation between two associations, Golden Gate, represented by attorney Hatch, and Mechanical Contractors, represented by attorney Smith. During the litigation Hatch wrote a letter to his client, Scott, who was also a defendant in the main action, defaming Smith. This letter was read aloud by Scott (who incidentally was a director of Golden Gate) to the meeting of Mechanical Contractors. The other letter defaming Smith was written to the trial judge, in which Hatch sought a continuance in the main suit. The court, holding that both letters were absolutely privileged, pointed out that Hatch was an attorney for both Golden Gate and defendant Scott; the letter was sent to his client; and, more importantly, the Scott letter was published in an effort to settle the litigation between the parties (p. 45), and the letter sent to the judge was seeking a continuance in the action. As a result, the court found the necessary relation between the publication and the lawsuit despite the fact that the events took place outside of the court.

Finally, we observe that the fact that a defamatory statement was initially protected by an absolute privilege because it was uttered on a privileged occasion by persons who are covered by the privilege does not include a full scale, blanket authorization to republish the same on a non-privileged occasion to persons to whom the privilege is not applicable. Thus, in *Kennedy* v. *Cannon* (1962) 229 Md. 92 [182 A.2d 54], the attorney of record repeated to the newspapers certain defamatory matters which were originally uttered during the judicial proceeding and were absolutely privileged. Holding that the original privilege did not extend to the extrajudicial statements, the court first pointed out that counsel is protected for defamatory words in a judicial proceeding and the words thus spoken are not actionable even if they would be actionable if spoken elsewhere. However, the court underscored that the absolute privilege will not attach to counsel's extrajudicial publications related to the litigation which are made outside the purview of the judicial proceeding, nor will the attorney be protected by the absolute privilege as to actionable words spoken before persons in no way connected with the proceeding (*Robinson* v. *Home Fire & Marine*

*Ins. Co.* (1951) 242 Iowa 1120 [49 N.W.2d 521]; *Jacobs* v. *Herlands* (1940) 51 Misc.2d 907 [17 N.Y.S.2d 711]; *Viosca* v. *Landfried* (1916) 140 La. 609 [73 So. 698]). The court also made it unmistakable that an attorney who wishes to litigate his case in the press will do so at his own risk (*Kennedy* v. *Cannon, supra,* at p. 58). The same reasoning applies with equal, if not greater, force to the case at bench.

We conclude that respondents' extrajudicial statements which are the sole object of the present appeal were not absolutely privileged under existing law. Nor does the public policy, which tolerates rather than hails the occasional impunity of a slanderer, mandate the invocation of privilege, either. According to the allegations of the Complaints which must be considered true, the defamatory statements here were not uttered on a privileged occasion, nor did they aim at securing the litigants as other participants the utmost freedom of access to the court. But most of all, they were not made to achieve the objects of the litigation and to promote the unfettered administration of justice. Under these circumstances we are constrained to hold that the allegations in the Complaints fail to disclose upon their face that the defamatory publications were made in a judicial proceeding within the meaning of Civil Code, section 47, subdivision 2. Consequently, the sustaining of respondents' demurrers without leave to amend on the ground that the Complaints failed to state a cause of action constituted reversible error. Accordingly, the judgments below must be, and each is, reversed.

Taylor, P. J., and Rouse, J., concurred.