[Civ. No. 57411. Second Dist., Div. Five. Apr. 4, 1980.]

DENNIS JAMES IZZI, Plaintiff and Appellant, v.
CHRIS S. RELLAS, Defendant and Respondent.

## COUNSEL

Barchiesi & Barbara and Chester A. Barchiesi for Plaintiff and Appellant.

Leonard Pape for Defendant and Respondent.

## OPINION

**STEPHENS, J.**—This dispute had its origin in another lawsuit, Jackson v. Parra, Los Angeles Superior Court case number C 228-366. In that action appellant (Dennis James Izzi) represented the plaintiff in a suit for personal injuries and property damage sustained by the plaintiff in an automobile accident. The complaint in that case was filed on January 31, 1978, and was served on defendant Parra on February 5, 1978. According to section 412.20, subdivision (a)(3), of the Code of Civil Procedure, defendant Parra had until March 7 to file responsive pleadings.

The defense of this matter was entrusted to the defendant's insurance company, the Automobile Club of Southern California. That company's agent, a Ms. Greer Malone, was assigned to administer the file. On February 27, 1978, Ms. Malone mailed that file to respondent (Chris S. Rellas), an attorney, for the legal defense of the complaint.

It was not until March 8 that Mr. Rellas' office received the file, at which point respondent Rellas attempted in vain to reach appellant Izzi for an extension of time in which to answer the complaint. On that very same day, March 8, Mr. Izzi petitioned the court for a default to which

the court consented and entered a default judgment against defendant Parra. On March 10, Mr. Rellas filed an answer with the court.

Mr. Izzi sent a letter to Mr. Rellas dated March 15, 1978, in which he offered to stipulate to set aside the default upon certain conditions, the text of which follows: "As you were advised in a recent telephone conversation with your office, a default in the above referenced case was entered against you on March 8, 1978. Therefore, your answer, filed on March 10 is ineffective, and you are without standing to submit any additional items of discovery to my client.

"...in the interest of equity and efficient legal representation, I am willing to enter into a stipulation to set aside this default under the following terms and conditions:

"1. This office has already incurred the expense of filing the default, a fact required in order to elicit an answer to our complaint. The reasonable value of such legal services is $500.00 which you agree to pay to this office immediately.

"2. This office will be given priority in all discovery, including but not limited to the taking of any and all depositions.

"3. You agree to provide to this office copies of any and all photographs, reports, documents relative to this claim and accident which you have now or subsequently come to have in your possession, including medical reports prepared by your examiners.

"4. You furnish complete answers by your client to each of the questions propounded on the enclosed interrogatory.

"5. That your answers to the interrogatory and your production of documents, photographs, and reports be complete and of sufficient detail to illustrate your good faith effort to comply with the terms of the stipulation. It should be understood that no stipulation will be executed if the answers of your client are a subterfuge of the rights of plaintiff.

"All of the above may, of course, be avoided if we can arrive at an equitable settlement of this case. As you well know, your client's negligence in this matter is beyond question. Additionally, there is no issue of any comparative negligence by plaintiff. There remains only the subject of damages.

"A statement of damages was included with our entry of default, and these are generals in the amount of $91,250.00, medicals at $1,167.50, and costs. I believe that my client would accept a reasonable settlement offer, perhaps two-thirds of those amounts.

"Please advise this office of your decision as soon as possible.

"Very sincerely yours,
DENNIS JAMES IZZI
Attorney at Law

by: /s/ Dennis James Izzi
Dennis James Izzi"

In response to Mr. Izzi's letter, Mr. Rellas wrote the following:

"March 22, 1978

"Dear Mr. Izzi:

"I was somewhat surprised to receive your letter of March 15, 1978 wherein you indicate that you entered a default against my client on March 8, 1978. My file reflects that an answer was filed and accepted by the Court no later than March 10, 1978.

"I was also surprised by the tenor of your letter wherein you indicate that in the interest of equity and efficient legal representation you are willing to extort those items set forth by you in paragraphs one through five. You then indicate that you are willing to refrain from extorting the above mentioned items if we could arrive at some equitable settlement of your case.

"If by some chance your request to enter default preceded my answer, you can rest assured that my motion to set aside the default will include a copy of your letter which, I am sure, is most revealing.

"You have mailed to me what appear to be interrogatories, commencing with page two and ending on page seventeen, unexecuted and undated. Possibly your secretary failed to include a cover page indicating to whom the interrogatories were addressed.

"We enclose the interrogatories, and suggest that if it is your desire to serve us with interrogatories, to please address them correctly and we shall be more than happy to furnish you with those answers which are available to us.

"With reference to the interrogatories served upon you by our office, please be advised that unless answers are forthcoming in accordance with the rules, you can rest assured that we will be filing our motion to compel answers and for sanctions.

"Very truly yours

/s/ Chris S. Rellas
CHRIS S. RELLAS

"CSR/spb
Enc.
cc: G.Malone, ACSC"

Objecting to the language set forth in paragraph two of respondent-Rellas's letter, appellant-Izzi filed a complaint for damages based on a theory of libel per se on July 7, 1978. The superior court hearing this matter on August 17, 1978, rendered a judgment of dismissal after respondent's demurrer was sustained without leave to amend. To this ruling appellant now appeals.

## DISCUSSION

The main issue with which we must deal is clear: Did the letter give rise to an action for defamation? Expressed in a different form—is the letter privileged? If there is a privilege attached to the communication, that privilege is fatal to an action for defamation. Subordinate to this issue is another issue, that being whether it is necessary to plead special damages in order to recover in a defamation action. However, in reaching a definitive answer with regard to the first and primary issue, so too will this secondary issue be answered.

Leaving aside the question of whether Izzi's letter was extortionate as a matter of law, we direct our attention to counsel's argument.

The central thrust of appellant's first argument is that respondent's statements were scurrilous as well as denigrating, and not protected by the privilege provided by section 47, subdivision 2, of the Civil Code.[1] █ This statute has been interpreted as follows: "'[A]bsolute privilege in judicial proceedings is afforded only if the following conditions have been met: the publication (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objects of the litigation; and (4) involved litigants or other participants authorized by law.'" (*Twyford* v. *Twyford* (1976) 63 Cal.App.3d 916, 925 [134 Cal.Rptr. 145], quoting *Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 825 [106 Cal.Rptr. 718].)

The court in *Pettitt* v. *Levy* (1972) 28 Cal.App.3d 484 [104 Cal.Rptr. 650], stated that the privilege embodied in Civil Code section 47, subdivision 2, can be accorded statements published outside of the courtroom and involving no function of the officers of that court.

Confronted with a situation much the same as the case at bench was the court in *Lerette* v. *Dean Witter Organization, Inc.* (1976) 60 Cal. App.3d 573 [131 Cal.Rptr. 592]. That court dealt with the determination of whether or not a letter sent by an attorney to a potential litigant, alleging fraud and violations of securities law was privileged. Importantly, the alleged defamation occurred prior to the initiation or invocation of any judicial action. Accordingly, in determining the letter to be privileged, the *Lerette* court held that proceedings commenced with the decided intent to avoid the use of the courts in resolving legal disputes would fall within the ambit of "judicial proceedings." As the court stated at pages 576-577: "The purpose of section 47 is to afford litigants the utmost freedom of access to the courts in order to secure and defend their rights [citation], and, to that end, to protect attorneys during the course of their representation of their clients. [Citations.] . . . It is . . . well established legal practice to communicate promptly with a potential adversary, setting out the claims made upon him, urging set-

---

[1]Section 47, subdivision 2, reads in part as follows: "A privileged publication or broadcast is one made—. . .2. In any. . .judicial proceeding. . .provided, that an allegation or averment contained in any pleading or affidavit filed in an action for divorce or an action prosecuted under Section 137 of this code made of or concerning a person by or against whom no affirmative relief is prayed in such action shall not be a privileged publication or broadcast as to the person making said allegation or averment within the meaning of this section unless such pleading be verified or affidavit sworn to, and be made without malice, by one having reasonable and probable cause for believing the truth of such allegation or averment and unless such allegation or averment be material and relevant to the issues in such action."

tlement, and warning of the alternative of judicial action. [Citation.] [The attorney's]...letter is a typical example of such a missive. [¶] For the above reasons, *the privilege to defame in the course of judicial proceedings is not limited to statements during trial but can extend, notwithstanding the phrasing of the statute, to steps taken prior thereto.*" (Italics added.)

■ It is manifest that the rule established in *Lerette* and *Pettitt* expands the working definition of "judicial proceedings" to include proceedings which have the real potential for becoming a court concern. It is that very situation which now confronts this court. In that respondent's letter indicates his desire to contest the validity of the default by moving the court to vacate its judgment, it is clear that the alleged defamation was made in the course of proceedings preliminary to "judicial proceedings." It then follows that the "judicial proceedings" qualification for establishing the privilege has been met.

■ Appellant claims that no connection can be established between the published matter and the underlying action. More specifically, appellant contends respondent's letter bears no relationship to respondent's representation of his client.

It is the opinion of this court that respondent's letter does in fact concern the underlying matter of Jackson v. Parra. California courts have consistently applied a liberal standard for establishing a relationship between publications made by parties and judicial proceedings. (See *Brody* v. *Montalbano* (1978) 87 Cal.App.3d 725, 734 [151 Cal.Rptr. 206]; *Smith* v. *Hatch* (1969) 271 Cal.App.2d 39, 46 [76 Cal.Rptr. 350]; *Friedman* v. *Knecht* (1967) 248 Cal.App.2d 455, 460 [56 Cal. Rptr. 540]; *Thornton* v. *Rhoden* (1966) 245 Cal.App.2d 80, 90 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152].)

■ In *Friedman* v. *Knecht, supra,* 248 Cal.App.2d 455, we held to be afforded protection, the defamatory matter need not be strictly pertinent or relevant to any issue involved in the litigation, but it must have some reference to the subject matter thereof. (*Id.* at p. 460.) Similarly, the court in *Pettitt* v. *Levy, supra,* 28 Cal.App.3d 484, noted that "[t]he publication need not be pertinent, relevant or material in a technical sense to any issue if it has some connection or relation to the proceedings." (*Id.* at p. 489.) *Ascherman* v. *Nathanson* (1972) 23 Cal.App.3d 861, 865 [100 Cal.Rptr. 656]; *Thornton* v. *Rhoden, supra,* 245 Cal. App.2d 80, 90.)

""["[D]oubts [if any] are to be resolved in favor of relevancy and pertinency; that is to say, the matter to which the privilege does not extend must be so palpably wanting in relation to the subject matter of the controversy that there can be no reasonable doubt of its impropriety."" (*Twyford* v. *Twyford, supra,* 63 Cal.App.3d 916, 926, quoting *Thornton* v. *Rhoden, supra,* 245 Cal.App.2d 80, 93; *Friedman* v. *Knecht* (1967) 248 Cal.App.2d 455, 460 [56 Cal.Rptr. 540].)

Most unlike the facts in our case is the situation presented in *Bradley* v. *Hartford Acc. & Indem. Co., supra,* 30 Cal.App.3d 818. The court in *Bradley* determined that the inclusion of defamatory matter in extra-judicial documents was filed with the court "for the sole purpose of having the defamatory statements contained therein quoted and republished...." (*Id.* at p. 822.) Concerned with abuse, exploitation, and the undermining of the privilege, the court held the statements must have a reasonable relation to the action and be made to achieve the valid purpose of the litigation. In the case confronting us there is little, if any, doubt that this letter did not deal specifically with the achieving of the objects of the litigation. Inclusive in the "infamous" correspondence, are the related topics of the setting aside of a default judgment, a discussion of discovery to be conducted by both sides, and a discussion of settlement.

Appellant contends that the alleged defamatory words of which he complains, were a deviation from the letter. We find it more plausible to view the unflattering words involved as nothing more than a rhetorical reiteration of respondent's position with regard to appellant's suggestions as to how discovery be conducted and settlement be approached. By way of his letter, respondent was pointing out, albeit forcefully, that he felt appellant's demands were less than reasonable. Respondent was faced with a situation where, through no fault of his own, the statutory period to answer on behalf of his client had elapsed. In fact on the very day upon which that statutory period expired the case was referred to him. Respondent was unable to reach appellant for an extension of time. Two days after receiving the case, respondent checked with the register of civil actions and filed an answer in the good faith belief that no default had been entered; he then received a letter from plaintiff's counsel, the appellant, informing him that a default had been entered and that the courtesy of a stipulation to be relieved of the same would not be extended to respondent. Further, that stipulation would be agreed upon only on terms most unfavorable to re-

spondent's client. Alternatively, that settlement could be had in a sum roughly 60 times the amount of plaintiff's medical expenses.

While it is not the responsibility of this court to determine what damages, if any, appellant's client would be entitled to, respondent's response to what a reasonable person would consider an unreasonable and unconscionable offer for settlement is entirely fathomable.

Although we cannot condone the use of any language which lacks truth and contains malice, this court must take judicial notice of words such as "to extort" and words which might have a comparable inflammatory effect on its listener. Although it need not be, this type of language is part of the adversary system, and, as such, is to be anticipated in the course of "heated battle" between adverse parties to proceedings considered to be within the context of "judicial proceedings."

While it is the firm desire of this court that communications between legal adversaries remain amicable throughout any dispute, it is reasonable to expect that communications between plaintiff, defendant and (their) respective counsel may become "strained" or "heated" and, for that matter, "abusive" when each pursues his or her rights to the fullest. ▮ Accordingly, we concur with the holding in *Albertson v. Raboff* (1956) 46 Cal.2d 375, 380-381 [295 P.2d 405]; *Lerette v. Dean Witter Organization, Inc. Supra,* 60 Cal.App.3d 573, 576-577, and *Thornton v. Rhoden, supra,* 245 Cal.App.2d 80, 87, which espouse the view that the privilege doctrine incorporated in Civil Code section 47, subdivision 2, is broad in its application, providing for an unrestricted access to the courts to both prospective and actual litigants.

In *Friedman v. Knecht, supra,* 248 Cal.App.2d 455, this court determined that the right of an attorney engaged in a judicial proceeding and in active pursuit of the objectives of that proceeding, to make defamatory statements related to any issue in that action was *absolute.* We pointed out in the *Friedman* opinion that language privileged by section 47, subdivision 2, of the Civil Code need not be totally unbridled or unchallengeable. This is because of the availability of court imposed sanctions and, especially in the case of attorneys, the availability of disciplinary actions taken by the state bar. These alternatives achieve the purpose of discouraging acrimonious exchanges between parties or their attorneys, while preserving their right to litigate. As we stated in *Fried-*

*man, supra*: "We are satisfied that in all but an infinitesimal number of cases such sanctions are adequate to curb those who would abuse their privilege and, at the same time, to protect an attorney whom his opponent might be tempted to slander." (*Id.* at p. 462.)

As established in *Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818 [106 Cal.Rptr. 718], a corollary to the rule that to be accorded a judicial privilege, a statement must be related to the underlying action, is that the statement must be made to achieve the objects of that litigation. Appellant asserts that the language used in respondent's letter accuses him (appellant) of the crime of extortion. Incident thereto, such an accusation, appellant claims, could in no way be considered germane to respondent's furtherance of the litigation on behalf of his client's best interests.

█ It is true, as appellant claims, that the allegedly defamatory statements unveil an emotionally charged and angered attorney. It matters little, however, whether or not respondent was seeking to vent his personal ire as opposed to the anger of his client, upon appellant. In view of the highly unfavorable conditions of settlement which appellant proposed to respondent, and, thereby respondent's client, it is clear that respondent was speaking for his client's best interests. The indisposition of a party or his attorney to conditions for settlement proposed by an adverse party or his attorney is inherently part of the pursuit of the party objectives in the course of litigation.

█ As to either respondent or his client's animosity towards appellant as confirmed by the complained of statements, the rule remains steadfast: evidence of malice will not negate the applicability of the privilege embodied in Civil Code section 47, subdivision 2. (See *Royer* v. *Steinberg* (1979) 90 Cal.App.3d 490, 499 [153 Cal.Rptr. 499]; *Rader* v. *Thrasher* (1972) 22 Cal.App.3d 883 [99 Cal.Rptr. 670]; *Smith* v. *Hatch* (1969) 271 Cal.App.2d 39, 45-46 [76 Cal.Rptr. 350].)

█ As set forth in *Bradley* v. *Hartford Acc. & Indem. Co., supra,* 30 Cal.App.3d 818, the privilege is accorded statements of a defamatory nature only if published or disseminated to persons interested or connected in some way to the underlying judicial proceeding. In his complaint for defamation, appellant sets forth the necessary element of publication by stating the following: "The letter was seen and read by Greer Malone of the Automobile Club of Southern California in Los

Angeles California." In that that statement fails to allege Ms. Malone's interest or noninterest in the matter, it is appellant's contention that the statement taken by itself would preclude the affirmative defense maintained by respondent, that being absolute privilege.

■ In adjudicating the sufficiency of a complaint, the superior court is mandated by Code of Civil Procedure section 430.30 to search the face of the complaint in determining whether or not there exist facts sufficient to state a cause of action. However, a court is not strictly limited to the facts found upon the face of the complaint and may readily rely on facts judicially noticed. As we stated in *Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co.* (1975) 53 Cal.App.3d 576, 579, footnote 1 [126 Cal.Rptr. 267]: "In ruling on a demurrer the court may consider not only the allegations of the complaint but also facts of which the court may or must take judicial notice, including the court files in other cases involving the parties." (See also *Bill Loeper Ford* v. *Hites* (1975) 47 Cal.App.3d 828, 830, fn. 1 [121 Cal.Rptr. 131].)

It is evident from the court record that the file of Jackson v. Parra was judicially noticed. Correspondingly, the file reflects that Ms. Malone had a substantial interest in the Jackson matter. Ms. Malone was working as an employee for the Automobile Club of Southern California which was the insurer of defendant in the action of Jackson v. Parra. In the course of her employment, Ms. Malone was the agent responsible for supervising the file and as such was intimately acquainted with it. In fact it was Ms. Malone who sent the very file to respondent, which due to an unforeseen delay in the mail caused a default judgment to be rendered against her principal, which, in turn, precipitated the action now before this court.

In many respects, the Automobile Club of Southern California represented by its agent Ms. Malone had a genuine interest in the Jackson v. Parra matter, in that it stood to indemnify the insured for any losses suffered or occasioned by the insured. Therefore, it stands to reason that keeping Ms. Malone advised of the disposition of her insured's case was proper in providing protection to the insurance company by advising it of the legal problems which it too might face.

Thus, notwithstanding the unfortunate language which appears to scurrilize the appellant-attorney and the fact that it was written in an atmosphere of intensity and acrimony, we are loathe not to conclude

this letter is protected under section 47, subdivision 2, of the Civil Code, falling within the parameters established in *Bradley* v. *Hartford Acc. & Ind. Co., supra,* 30 Cal.App.3d 818, ergo, it may not be the proper subject in a suit for defamation.

This conclusion renders appellant's remaining contentions moot and, as such, we choose not to discuss them.

Affirmed.

Kaus, P. J., and Ashby, J., concurred.