[No. A023130. First Dist., Div. One. Feb. 24, 1984.]

EDWARD COSTA et al., Petitioners, v.
THE SUPERIOR COURT OF SOLANO COUNTY, Respondent;
DONALD PASSALACQUA et al., Real Parties in Interest.

674

**COUNSEL**

Morgan D. King, King, King & King and Ellen Lake for Petitioners.

No appearance for Respondent.

Alfred Newman, Sharon L. Anderson and Newman, Dunn & Rogaski for Real Parties in Interest.

**OPINION**

**RACANELLI, P. J.**—Petitioners are defendants in a libel action entitled Donald Passalacqua et al. v. Edward Costa et al., No. 82518, pending in respondent court. Following respondent court's denial of petitioners' motion for summary judgment predicated upon a claim of absolute privilege under the provisions of Civil Code section 47, subdivision 2, petitioners sought mandamus relief from this court which we summarily denied on July 8, 1983. On August 18, 1983, the California Supreme Court granted its petition for hearing and retransferred the cause to this court with directions to issue an alternative writ of mandate citing *Tiedemann* v. *Superior Court* (1978) 83 Cal.App.3d 918 [148 Cal.Rptr. 242]. We issued said alternative writ on August 24, 1983.

The petition seeking to compel respondent court to vacate its order of denial and to grant summary judgment in favor of petitioners arises against the following procedural background:

 Petitioner Conselho Supremo Da Uniao Portuguesa Do Estado Da California (hereafter Supreme Council), a California nonprofit mutual benefit corporation and fraternal lodge, adopting as its exclusive logo the acronym "UPEC," issued a charter in 1895 to a Benicia group to form a subsidiary council of UPEC under the name "Conselho No. 18, Flor Da

Patria UPEC'' (hereafter Council 18). In 1904 Council 18 incorporated and in turn incorporated a subsidiary council known as "Benicia UPEC Hall Association" (hereafter UPEC or Association), the latter holding title to certain real property and a meeting hall on behalf of Council 18. It is alleged that the UPEC Association bylaws provided that the members of Council 18 shall also be members of that association; that the boards of directors of both corporate boards are the same; that both organizations meet at the same time and place; and that revenue generated from the hall rental subsidize the operating expenses of Council 18.

In 1965 UPEC Association changed its name to "Benicia Portuguese Hall Association" (hereafter Benicia Association); petitioner Supreme Council alleges that such change of name by the subordinate lodge was unauthorized and in violation of the UPEC bylaws.

In 1980 the Benicia Association received insurance proceeds in the amount of $150,000 as a result of a fire which destroyed the hall. Petitioner Supreme Council's repeated requests for an accounting of the insurance proceeds as provided under the bylaws were rebuffed by real parties in interest (officers and directors of both Council 18 and the Hall Association) on the basis that the subsidiary lodge was a separate organization unrelated to UPEC.

On April 26, 1982, petitioner Supreme Council filed a complaint for injunctive and declaratory relief and damages against Council 18, Benicia Association and its individual board members (real parties herein). On May 17, 1982, the trial court denied petitioner Supreme Council's request for appointment of a receiver and a preliminary injunction but restrained the Hall Association from transferring real property.

On May 27, 1982, petitioner Edward Costa, acting as Chairman of the Board of Directors of the Supreme Council, sent a letter to the membership of Council 18 (reproduced verbatim as appen. A) for the avowed purpose of explaining the basis of the then-pending litigation and to solicit the support and views of the members relating to the issues in dispute. Thereafter, petitioner Supreme Council, purporting to act under its charter authority, revoked the charter granted to Council 18 as a result of the claimed violations. On July 29, 1982, real parties filed the underlying libel action against petitioners based on the contents of the May 27 Costa letter. Thereafter, the issue being joined, petitioners moved for summary judgment on the grounds—inter alia—that the Costa letter was published in relation to a judicial proceeding and thus protected as a matter of law under the absolute

privilege provided by Civil Code section 47, subdivision 2.[1] Real parties resisted the motion contending that the defamatory publication was made to nonlitigants, bore no logical relationship to the objectives of the litigation and thus was not subject to the absolute privilege in a judicial proceeding. Relying on *Izzi* v. *Rellas* (1980) 104 Cal.App.3d 254 [163 Cal.Rptr. 689], respondent court denied the motion on the basis that a triable issue of fact existed as to whether the publication "was made in a judicial proceeding, had some connection or logical relation to a legal action, was made to achieve the objects of the litigation or involved the litigants or other participants." This petition ensued.

■ In *Tiedemann* v. *Superior Court, supra,* 83 Cal.App.3d 918, we examined the scope of the statutory privilege in the context of a publication made during an "official proceeding authorized by law." (Civ. Code, § 47, subd. 2(3).) In reviewing extant authority we concluded that: "It is now well established in California case law that the privilege conferred under subdivision 2 is absolute and unaffected by the presence of malice. (*Ascherman* v. *Natanson* (1972) 23 Cal.App.3d 861, 864-865 [100 Cal.Rptr. 656]; *Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 379 [295 P.2d 405]; *Gosewisch* v. *Doran* (1911) 161 Cal. 511, 513-515 [119 P. 656]; *Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 824 [106 Cal.Rptr. 818]; *Hackethal* v. *Weissbein* (1978) 82 Cal.App.3d 559, 563 [147 Cal.Rptr. 284].) The absolute immunity attaches if all of the following conditions have been met: 'the publication (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objectives of the litigation; and (4) involved litigants or other participants authorized by law.' *Bradley* v. *Hartford Acc. & Indem. Co.,* *supra,* at p. 825; accord: *Twyford* v. *Twyford* (1976) 63 Cal.App.3d 916, 925 [134 Cal.Rptr. 145]; and *Younger* v. *Solomon* (1974) 38 Cal.App.3d 289, 301 [113 Cal.Rptr. 113].)" (*Id.,* at p. 924.)

■ We further concluded that: "In order that the privilege apply, it is unnecessary that the defamatory matter be relevant or material to an issue before the tribunal but need only have some proper connection or relation to the proceeding and in achieving its objectives. (*Ascherman* v. *Natanson,* *supra,* at p. 865; *Bradley* v. *Hartford Acc. & Indem. Co.,* *supra,* 30 Cal.App.3d 818, 824.)" (*Id.,* at pp. 924-925.) ■ Once the stated conditions for immunity are shown to exist, the absolute privilege applies "even though the publication is made outside the courtroom and no function of the court or its officers is invoked." (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375,

---

[1]Other grounds urged included a claim of qualified privilege (see Civ. Code, § 47, subd. 3); however, petitioners base their request for relief solely on the theory of absolute privilege.

381 [295 P.2d 405]; *Smith v. Hatch* (1969) 271 Cal.App.2d 39, 45-46 [76 Cal.Rptr. 350]; accord *Lerette v. Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573, 576, fn. 5 [131 Cal.Rptr. 592]; *Rader v. Thrasher* (1972) 22 Cal.App.3d 883, 886-887 [99 Cal.Rptr. 670].) ■ And where the facts and circumstances under which a defamatory publication was made are undisputed, the question of privilege is a matter of law. (*Carpenter v. Ashley* (1906) 148 Cal. 422, 423-424 [83 P. 444].)

■ Applying those governing principles herein, we conclude that the trial court erred in its determination that triable issues of fact existed as to the claim of absolute privilege. The record before us discloses no dispute as to the facts and circumstances surrounding the challenged publication. Thus, the trial court's conclusion—consisting of a recital of the elements underpinning the privilege—is wholly unsupported. To the contrary, as we observed, the question of privilege based upon such undisputed record presented only a question of law. The letter written to the members of Council 18 sought to explain the basis and purpose of the litigation initiated by petitioner Supreme Council against its subsidiary lodge involving claimed bylaws violations and accounting of corporate assets. Additionally, it sought the support and guidance of the membership as to the proper course of action to be undertaken by the Supreme Council on their behalf. Unquestionably the communication, though outside the courtroom, was made in connection with and related to the judicial proceeding involving the subject litigation. (Cf. *Lerette v. Dean Witter Organization, Inc., supra,* 60 Cal.App.3d 573; *Smith v. Hatch, supra,* 271 Cal.App.2d 39.) It is equally clear that the content of the letter was reasonably related to the background and purpose of the pending action and designed to aid in accomplishing the objectives of ascertaining the proper legal status of the subordinate organization, declaratory relief on questions of ownership and management, fiduciary accountability and damages. Any doubt as to whether such relationship or connection existed must be resolved in favor of a finding of privilege. (*Izzi v. Rellas, supra,* 104 Cal.App.3d at p. 263; *Tiedemann v. Superior Court, supra,* 83 Cal.App.3d at p. 925; *Twyford v. Twyford* (1976) 63 Cal.App.3d 916, 926 [134 Cal.Rptr. 145].)

Finally, the subsidiary lodge members to whom the letter was addressed possessed a substantial interest in the outcome of the pending litigation and as such were authorized participants therein. (See, e.g., *Brody v. Montalbano* (1978) 87 Cal.App.3d 725, 733-734 [151 Cal.Rptr. 206]; *Izzi v. Rellas, supra,* 104 Cal.App.3d 254;[2] Rest.2d Torts, §§ 586-587; *Smith v. Hatch, supra,* 271 Cal.App.2d 39, 47.)

---

[2]We reject real parties' contention that the letter was not intended to achieve legitimate litigation objectives but was motivated in an attempt to circumvent denial of full injunctive relief. *Earp v. Nobmann* (1981) 122 Cal.App.3d 270 [175 Cal.Rptr. 767] and *Bradley v.*

We conclude that no triable issues of fact were presented concerning petitioners' claim of absolute privilege. As noted, in such circumstances, the question is solely one of law which the trial court had a duty to determine. (See *Burke Concrete Accessories, Inc.* v. *Superior Court* (1970) 8 Cal.App.3d 773, 775 [87 Cal.Rptr. 619].) Since petitioners are entitled to the summary relief requested as a matter of law, we elect to grant such relief by order herein in the interests of judicial economy. (*Tiedemann* v. *Superior Court, supra,* 83 Cal.App.3d at p. 927.)

Petitioners' motion to take judicial notice and request for attorney fees are denied. In view of our determination, it becomes unnecessary to discuss the remaining issues presented by the petition.

Let a peremptory writ of mandate issue directing that summary judgment be entered in favor of petitioners, and each of them.

Newsom, J., and Holmdahl, J., concurred.

---

*Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, upon which real parties rely, are factually distinguishable. In *Earp,* no privilege was found where the publisher sought to avoid the available statutory remedy by a subsequent defamatory claim of interest. In *Bradley,* the defamatory statements were communicated to strangers to the litigation and merely a "ruse" to spread the defamatory content. In reality, real parties' contention of improper motivation or bad faith relates to the question of malice, an issue irrelevant to the otherwise available privilege. (*Izzi* v. *Rellas, supra,* 104 Cal.App.3d at p. 265 [and cases there cited]; see also *Tiedemann* v. *Superior Court, supra,* 83 Cal.App.3d at p. 926.)

APPENDIX A

 # SUPREME COUNCiL OF U. P. E. C.

HOME OFFICE 1120 EAST 14th ST • SAN LEANDRO CALIF. FRATERNAL INSURANCE • PHONE 483-7676

May 27, 1982

As Chairman of the Board of Directors of the Supreme Council of U.P.E.C., I am sending you this letter to provide you with some background information which you may be interested in having regarding the current lawsuit involving the U.P.E.C. hall and the insurance proceeds from the hall.

As a long standing and faithful member of Council 18, U.P.E.C., you are entitled to be informed as to what your Supreme Council is doing on your behalf to protect the interests of Council 18.

As you have probably learned by now, the Supreme Council filed a lawsuit recently against the Benicia Portuguese Hall Association on behalf of your council (Council 18), and on behalf of the Supreme Council. This action was taken after we had received a number of complaints and inquiries from several of the local members of Council 18, including your president, and following an extensive investigation on our part into the handling of funds and accounts for your council.

It has for many years been our understanding that Council 18 owned the U.P.E.C. hall in downtown Benicia. We know that it has been known as the U.P.E.C. Hall, and it has been listed as the U.P.E.C. Hall in the directory of subsidiary councils published by the Supreme Council.

This property was donated to the Benicia U.P.E.C. Hall Association in 1905. It is our understanding, at this time, that the Benicia U.P.E.C. Hall Association was part of Council 18, pursuant to its charter granted in 1895.

We have recently learned, however, that in 1965 the Benicia U.P.E.C. Hall Association changed its name to Benicia Portuguese Hall Association, resulting in the deletion of the initials U.P.E.C. This was done without the consent of the Supreme Council, which is a violation of the U.P.E.C. bylaws. This irregularity, however, would have been considered minor except for recent developments which have greatly alarmed your Supreme Council Board of Directors. The point is, that there are two separate organizations at this time, Council 18, which you are a member of, and which is an official U.P.E.C. corporation, and a totally different and separate corporation called the Benicia Portuguese Hall Association, which appears to own the real estate and the insurance proceeds from the fire in 1980. In other words, at least since 1965, the hall which you and I always thought was the property of Council 18, appears to be actually owned by a totally separate corporation which we believe very few of you, perhaps none of you, even knew about. The people who control this second corporation, and therefore control your hall, are the secretary of Council 18, Gerald Dana, Donald Passalacqua, Andrew Siri and Vernon Estey.

According to the U.P.E.C. bylaws, Council 18 is supposed to account annually to the Supreme Council for all its financial transactions. The purpose of this accounting is to protect you and to assure that your affairs are being handled in a regular and proper manner.

We have learned, however, that your affairs have not been held in a proper manner, and that your officers appear to be violating the bylaws regularly, and are now, in fact, claiming that the U.P.E.C. hall is not owned by you or your local council at all.

Accordingly, we felt it necessary to file this lawsuit in order to prevent your hall from being taken away from you and to establish that all of the members of Council 18 have a right to have a say in the management and control of the monies, proceeds and property pertaining to the U.P.E.C. Hall. The Supreme Council is not interested in acquiring any of your property or assets or money. However, because of the position taken by the four officers mentioned, the Supreme Council felt that we should take action to reorganize your board of directors so that you will have a board of directors that will obey the bylaws and properly account to you and to the Supreme Council for your funds and properties.

For this reason, the Supreme Council has notified all of the members of the board of directors of Council 18 of their temporary suspension and they will be "tried" for violations of the bylaws at the next board meeting of the Supreme Council which will be on June 19, 1982 at 10:30 a.m., at the offices of the Supreme Council in San Leandro.

The reason these officers are being tried by the Council is not only for their gross mishandling of the financial affairs of Council 18, but also because they are taking the position that this hall does

not even belong to you or to your Council, but belongs to a totally separate corporation of which they are the board of directors. We feel that this is a grossly unfair position taken by these individuals and is contrary to their fiduciary duty to your Council and to the Constitution of U.P.E.C.

Let me emphasize that the purpose of this lawsuit is simply to establish that your own Council, Council 18 Flor da Patria U.P.E.C., is the owner of this property and has the right to govern the proceeds and monies from the property, and other funds of the Benicia Portuguese Hall Association. It will be important for us to know whether you are supporting us in this action. We are asking you to give this some thought, to talk to your friends and associates in the Council, and to search your conscience as to what should be done in this matter. If you believe, as we do, that this hall is a U.P.E.C. hall, and that it should be, and always should have been, a part of your Council, please write us a letter or a note as soon as possible explaining your concerns and position that you wish us to take in this matter.

Also, I have several specific questions that I would like to ask you. First of all, did you know that this hall was owned by a totally separate organization and not by Council 18? In other words, have you known previously about the existence of an organization called the Benicia Portuguese Hall Association or the Benicia U.P.E.C. Hall Association? Secondly, if you did know about it, did you believe that this was a part of Council 18 or a totally separate organization with no connection to Council 18? Thirdly, do you believe that you were meeting in the "U.P.E.C. Hall" or only something known at the Benicia Portuguese Hall? In other words, we would appreciate knowing everything that you can tell us that might be helpful concerning the relationship between these two organizations. If, in fact, you have known that there was a separate corporation, and that the hall was always owned by that corporation, and that it was not a part of Council 18, please inform us of this.

Let me emphasize that we are taking this action on your behalf. If you know anything that we should know to indicate that we do not understand the true facts of this situation, or that our action is improper, or if there is any reason that you know of that we should not pursue the course we have started, please inform us immediately of these facts.

Finally, because of the serious violations of the bylaws, the Supreme Council is considering suspending the entire charter of Council 18. If you wish your council to continue in existence as an official U.P.E.C. council, please tell us your desires on this matter as soon as possible.

Thank you for your most gracious assistance and attention.

Fraternally yours,

Supreme Council of U.P.E.C.

*Edward C Costa*

Edward C. Costa
Chairman, Board of Directors