[No. H011565. Sixth Dist. June 2, 1994.]

ELIAS SHAHVAR, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
ASP COMPUTER PRODUCTS, INC., et al., Real Parties in Interest.

**COUNSEL**

Bartko, Tarrant & Miller, Robert H. Bunzel, Christopher J. Hunt and Fabrice V. Nijhof for Petitioner.

Hopkins & Carley, Sherwood M. Sullivan and John T. Kennedy for Real Parties in Interest.

## OPINION

**MIHARA, J.**—The trial court overruled a demurrer by cross-defendant Elias Shahvar to a libel claim in a cross-complaint by ASP Computer Products, Inc., Amnon Even-Kesef, Ellen Sigal, and Gerald Sigal (cross-complainants). Shahvar seeks a writ of mandate. At issue is whether Shahvar was privileged under Civil Code section 47 to transmit a facsimile copy of a complaint to a newspaper. Cross-complainants contend that this facsimile communication was not privileged because it preceded the filing of the complaint. Shahvar asks us to take judicial notice that the complaint was filed the same day as the facsimile communication. For the reasons stated below, we conclude that the time of the complaint's filing is unimportant and that the conduct was not privileged because the communication was made to someone unrelated to the litigation. In reaching this conclusion, we disagree with *Abraham* v. *Lancaster Community Hospital* (1990) 217 Cal.App.3d 796 [266 Cal.Rptr. 360]. Accordingly, we will deny the petition.

### Discussion

■ "A general demurrer presents the same question to the appellate court as to the trial court, namely, whether the plaintiff has alleged sufficient facts to justify any relief, notwithstanding superfluous allegations or claims for unjustified relief." (*B & P Development Corp.* v. *City of Saratoga* (1986) 185 Cal.App.3d 949, 952-953 [230 Cal.Rptr. 192].) In light of this standard of review, we summarize the allegations of the cross-complaint, particularly the challenged fifth cause of action.

ASP Computer Products, Inc., was formed by Even-Kesef, Shahvar, and another person in early 1987 to market printer sharing and connectivity products. Even-Kesef was and is the president, chief executive officer, and a shareholder of ASP. Ellen Sigal is a shareholder and director of ASP. Gerald Sigal is her husband. The Sigals invested in ASP. Shahvar held several positions with ASP over the years. ASP eventually terminated Shahvar for poor performance and misconduct.

On April 2, 1993, Shahvar had his lawyer transmit a facsimile copy of a complaint to the San Francisco Examiner newspaper (the Examiner). This complaint falsely alleged, among other things, that Ellen and Gerald Sigal submitted invoices to ASP for work they did not do and that Gerald Sigal violated ASP's by-laws by transferring stock to Ellen Sigal for consideration in an effort to avoid shareholder or director liability to Shahvar. Shahvar's facsimile communication induced the Examiner to publish an article on Sunday, April 4, 1993, that summarized the complaint's allegations. On

April 5, 1993, Shahvar filed the complaint in Santa Clara County Superior Court. Shahvar also distributed copies of the Examiner article to social and business associates of Even-Kesef and the Sigals in Santa Clara County and in Israel. Cross-complainants' subsequent libel action sought general, special, and punitive damages resulting from Shahvar's conduct.

### 1. *The litigation privilege*

■ Civil Code section 47 shields certain statements from defamation liability. "A privileged publication or broadcast is one made . . . [i]n any . . . judicial proceeding . . . ." " '[T]he obvious purpose of section 47 [is] to afford litigants the utmost freedom of access to the courts to secure and defend their rights without fear of being harassed by actions for defamation.' (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 380 [295 P.2d 405].)" (*Financial Corp. of America* v. *Wilburn* (1987) 189 Cal.App.3d 764, 771 [234 Cal.Rptr. 653].) This "litigation privilege" (*Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 209 [266 Cal.Rptr. 638, 786 P.2d 365]) is "absolute in that it applies regardless of whether a statement was uttered with malice or bad faith." (*Financial Corp. of America, supra*, 189 Cal.App.3d at p. 771; cf. *Silberg, supra*, 50 Cal.3d at pp. 215-216.)

"The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have [*sic*] some connection or logical relation to the action." (*Silberg* v. *Anderson, supra*, 50 Cal.3d 205, 212; cf. *Financial Corp. of America* v. *Wilburn, supra*, 189 Cal.App.3d 764, 772-773.) "The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action. . . . The 'furtherance' requirement was never intended as a test of a participant's motives, morals, ethics or intent. (See *Financial Corp. of America* v. *Wilburn, supra*, 189 Cal.App.3d at p. 777; [citation].)" (*Silberg, supra*, 50 Cal.3d at pp. 219-220.) In other words, the communication must have an objective relationship to the litigation.

■ "A document is not privileged merely because it has been filed with a court or in an action. The privileged status of a particular statement therein depends on its relationship to an actual or potential issue in an underlying action." (*Financial Corp. of America* v. *Wilburn, supra*, 189 Cal.App.3d 764, 776.) In *Financial Corp. of America, supra*, this court concluded that all the allegations in a complaint filed in federal court were privileged where the plaintiffs did not identify a single allegation in the complaint as unrelated to

the litigation it commenced. (*Id.* at pp. 776-777.) *Abraham* v. *Lancaster Community Hospital, supra,* 217 Cal.App.3d 796, concluded that all allegations in a proposed amended complaint were privileged because they were "directly related to the issues raised by the pleadings." (*Id.* at p. 823.)

■ The basis for cross-complainants' libel cause of action is *not* that Shahvar filed a false complaint in court. Rather, the libel claim is based on Shahvar's communication of a copy of the complaint to the newspaper, which induced the newspaper to publish an article summarizing the complaint's allegations. Cross-complainants contend that Shahvar's communication of his allegations to a third party, the Examiner, was unrelated to this litigation and therefore not covered by the litigation privilege. We agree. "[R]epublications to nonparticipants in the action are generally not privileged under section 47 (2), and are thus actionable unless privileged on some other basis." (*Silberg* v. *Anderson, supra,* 50 Cal.3d 205, 219.) Although this statement in *Silberg* was dictum, we find it persuasive.

Our position is further supported by two other cases which have applied this limitation of the privilege. The first of the two, *Financial Corp. of America, supra,* considered the privileged nature of allegedly defamatory statements made by an attorney prior to filing a complaint. This court concluded that settlement demands to the opponent and evidence-gathering statements to potential witnesses were privileged "so long as litigation is seriously anticipated in good faith." (189 Cal.App.3d 764, 777-778.) The opinion also discussed a different type of statement. "As plaintiffs properly point out, they alleged defendant made the above-described accusations to 'persons throughout Northern California.' . . . Without speculating on the circumstances surrounding the making of a statement on any particular occasion, we generally observe an attorney will not 'be protected by the absolute privilege as to actionable words spoken before persons in no way connected with the proceeding [citations].' (*Bradley, supra,* 30 Cal.App.3d 818, 827 [disapproved on another ground in *Silberg, supra,* 50 Cal.3d at pp. 216-219].) The possible relationship of a listener or reader to anticipated litigation may determine whether the statement has some relation to it." (189 Cal.App.3d 764, 778.) While *Financial Corp. of America* applied the litigation privilege liberally, it concluded that the defendant's demurrer to the defamation claim should have been overruled because the plaintiffs alleged that the defendant had made unprivileged statements to persons who were unrelated to the litigation. (*Ibid.*; cf. *ITT Telecom Products Corp.* v. *Dooley* (1989) 214 Cal.App.3d 307, 316, fn. 8 [262 Cal.Rptr. 773].)

In the second case, *Susan A.* v. *County of Sonoma* (1991) 2 Cal.App.4th 88 [3 Cal.Rptr.2d 27], the appellate court held that ". . . the privilege does not

apply where publication is to persons in no way connected with the proceeding." (*Id.* at pp. 93-94.) In *Susan A.*, a psychologist had discussed with newspaper and television reporters his evaluation of a minor who had been arrested for attempted murder. (*Id.* at p. 92.) The court noted that a statement to newspaper reporters about a National Labor Relation Board decision had been found to be outside the litigation privilege in *Washer* v. *Bank of America* (1943) 21 Cal.2d 822 [136 P.2d 297, 155 A.L.R. 1338] (disapproved on another ground in *MacLeod* v. *Tribune Publishing Co.* (1959) 52 Cal.2d 536, 551 [343 P.2d 36]) and concluded that, while the privilege had been expanded, ". . . the expansion does not encompass publication to the general public through the press." (2 Cal.App.4th at p. 94.)

As *Silberg*, *Financial Corp. of America* and *Susan A.* illustrate, statements about existing or anticipated litigation by a party or the party's attorney to the news media, when the news media is neither a party to nor a participant in the litigation, are *not* privileged. Such statements are extraneous to the action and are not made "[i]n any . . . judicial proceeding." Here the facsimile communication of the complaint to the newspaper was nothing more than a republication of the complaint's allegations to an unrelated person. Whether the complaint was filed before or after the transmission of the facsimile, the communication to the newspaper was not protected by the litigation privilege in Civil Code section 47.[1]

### 2. *Abraham v. Lancaster Community Hospital*

Shahvar claims that *Abraham* v. *Lancaster Community Hospital, supra*, 217 Cal.App.3d 796, establishes that his conduct was privileged. In *Abraham* the plaintiff claimed that the defendants defamed him by (1) making allegations in a proposed amended federal complaint, (2) causing their allegations to be published in the local press, and (3) disseminating their allegations

---

[1]Shahvar's reply brief requests that we take judicial notice of the fact that he filed a copy of his complaint in Marin County Superior Court on April 2, 1993. This is the same date he allegedly transmitted a copy to the newspaper and three days before he filed the complaint in Santa Clara County. This fact is subject to judicial notice on appeal even though Shahvar did not ask the trial court to take judicial notice of it. (Evid. Code, §§ 452, subd. (d), 459.) A demurrer can be based on facts judicially noticed, even if those facts contradict the allegations of the complaint. (Code Civ. Proc., §§ 430.30, subd. (a), 430.70; *B & P Development Corp.* v. *City of Saratoga, supra*, 185 Cal.App.3d 949, 953.)

Cross-complainants contend that the Marin County complaint does not count as a complaint, because it was captioned as filed in Santa Clara County. (Code Civ. Proc., § 422.30, subd. (a).) A trivial caption defect does not affect the nature of a filed document. (Code Civ. Proc., § 475; cf. *Ex parte Fil Ki* (1889) 79 Cal. 584, 586-587 [21 P. 974].) Hence, we take judicial notice that Shahvar filed a complaint in Marin County on April 2, 1993. However, as noted above, the timing of the complaint's filing is irrelevant to the issue of whether the facsimile communication was a privileged communication.

within the local medical community. (*Id.* at pp. 805-806.) The defendants' allegations were essentially that the plaintiff, a hospital administrator, was employing his hospital's local monopoly on certain services to require health insurers to purchase other services from his hospital and not from competing hospitals. (*Id.* at pp. 802-803.) The primary defendant was a competing hospital. The Second District Court of Appeal concluded that the defendants' conduct was privileged. "[T]he publications in the Antelope Valley Press were confined to a report of the pleadings in the federal complaint. Since the articles were accurate reports of the contents of the federal pleadings (Abraham does not contend otherwise), they were absolutely privileged as a 'fair and true report in a public journal, of (1) a judicial . . . proceeding.' (Civ. Code, § 47, subd. 4.) Since both the pleadings in the federal court and publication in the press of a fair and true report of the pleadings are absolutely privileged, [fn. omitted] *it would defeat the purpose of section 47, subdivisions 2 and 4 to punish the transmittal of the privileged pleadings to the press.* [¶] Finally, there is the alleged communication of the allegations within the Antelope Valley and specifically within the medical community. These, too, are privileged communications. First, the local medical community possessed 'a substantial interest in the outcome of the pending litigation' and as such were 'participants' therein. (*Costa* v. *Superior Court, supra,* 157 Cal.App.3d at p. 678.) Second, to exclude these alleged communications about a judicial proceeding from the scope of section 47, subdivision 2 would impose a chilling effect on the public's discussion of pending litigation. Would judges or attorneys talking about allegations over lunch with their colleagues or at social dinners be subject to defamation suits? Would there be liability for hospital administrators discussing the fair and true report of allegations they read about in the Antelope Valley Press? 'It would be anomalous to hold that a litigant is privileged to make a publication necessary to bring an action but that he can be sued for defamation if he lets anyone know that he has brought it [citation].' (*Albertson* v. *Raboff, supra,* 46 Cal.2d at p. 380.)" (*Abraham* v. *Lancaster Community Hospital, supra,* 217 Cal.App.3d at pp. 823-824, italics added.)

We see no way to reconcile *Abraham*'s conclusions with this court's holding in *Financial Corp. of America* and the California Supreme Court's persuasive dictum in *Silberg*. *Abraham*'s conclusions are unsupported by case law, policy, or statute. *Abraham*'s quotation of *Albertson* v. *Raboff* (1956) 46 Cal.2d 375 [295 P.2d 405] is misleading. The full sentence stated: "It would be anomalous to hold that a litigant is privileged to make a publication necessary to bring an action but that he can be sued for defamation if he lets anyone know that he has brought it [citation], particularly when he is expressly authorized by statute to let all the world know he has brought it." (*Id.* at p. 380.) As *Albertson* explained, ". . . the question

presented therefore is whether a notice of *lis pendens* recorded as authorized by section 409 of the Code of Civil Procedure [fn. omitted] is a publication in the course of a judicial proceeding" and therefore privileged. *(Id.* at p. 379.) The court emphasized that the recording of a notice of pending action was authorized by statute. *(Id.* at pp. 379-380.) By quoting *Albertson* out of context, *Abraham* drew false parallels between recording a notice of pending action as authorized by statute, judges discussing cases over meals, and parties discussing cases with the media.

*Abraham*'s citation to *Costa* v. *Superior Court* (1984) 157 Cal.App.3d 673 [204 Cal.Rptr. 1] is also unsupportive. At issue in *Costa* was whether the litigation privilege applied to a letter concerning litigation over insurance proceeds. The litigation was between two fraternal lodges, a parent mutual benefit corporation and a subsidiary. The letter was written by the chairman of the parent lodge's board of directors to members of the subordinate lodge who were also members of the parent organization. *(Id.* at pp. 675-676.) The court concluded that the letter was privileged because ". . . the subsidiary lodge members to whom the letter was addressed possessed a substantial interest in the outcome of the pending litigation and as such were authorized participants therein." *(Id.* at p. 678.) The *Costa* opinion does not elaborate on the financial stake of a member in a mutual benefit corporation under the then-prevailing Corporations Code. It is a fair assumption that members have a personal financial stake in litigation involving a possible corporate liability. Thus, the member recipients of the letter could be regarded as actual parties to the litigation and were so regarded in *Costa*.[2]

*Costa*'s reference to the lodge members' "substantial interest in the outcome of the pending litigation" was to an interest of a different nature than the "interest" cited in *Abraham*. The *Abraham* opinion failed to establish that the interest of the local medical community in the underlying litigation was anything more than simple curiosity. The facts stated in the *Abraham* opinion do not reflect that members of the local medical community were actually parties to the underlying litigation or had any financial interest at stake in that litigation. Thus, *Abraham* erred in characterizing people who were merely curious about the underlying litigation as *participants* therein, and its citations of *Albertson* and *Costa* do not support its conclusions.

*Abraham* also placed undue reliance on its concern that public discussion of litigation would be chilled absent protection by the litigation privilege. However, *Abraham* failed to consider the extensive constitutional privileges

---

[2]We note that *Susan A., supra*, characterized *Costa, supra*, as extending the litigation privilege to "publication to nonparties with a substantial interest in the proceedings." (2 Cal.App.4th 88, 94.) We disagree with this characterization.

for free speech. ▆ Statements of "pure" opinion are not actionable; only false statements of fact are subject to defamation liability. (*Baker* v. *Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 260-268 [228 Cal.Rptr. 206, 721 P.2d 87]; *James* v. *San Jose Mercury News, Inc.* (1993) 17 Cal.App.4th 1, 12-19 [20 Cal.Rptr.2d 890]; *Milkovich* v. *Lorain Journal Co.* (1990) 497 U.S. 1, 21-22 [111 L.Ed.2d 1, 19-20, 110 S.Ct. 2695, 2707]. ▆ Liability arises for a false statement of fact about a public official or public figure only when " 'the statement was made with 'actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.' " (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 722 [257 Cal.Rptr. 708, 771 P.2d 406], quoting *New York Times* v. *Sullivan* (1964) 376 U.S. 254, 279-280 [11 L.Ed.2d 686, 706, 84 S.Ct. 710, 95 A.L.R.2d 1412].) " 'A private-figure plaintiff must prove at least negligence to recover any damages and, when the speech involves a matter of public concern, he must also prove *New York Times* malice, *supra*, 376 U.S. 254, to recover presumed or punitive damages.' (*Brown* v. *Kelly Broadcasting Co., supra*, 48 Cal.3d at p. 747 [citations].)" (*Carney* v. *Santa Cruz Women Against Rape* (1990) 221 Cal.App.3d 1009, 1019 [271 Cal.Rptr. 30].)

We find guidance in *Brown* v. *Kelly Broadcasting Co., supra*, although it involved a separate defamation privilege also set forth in Civil Code section 47. *Brown* was concerned with the privilege provided by former subdivision 3, now subdivision (c), for "a communication, without malice, to a person interested therein, (1) by one who is also interested or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information." (48 Cal.3d 711, 724.) *Brown* extensively considered the importance of reputation, First Amendment limitations on defamation liability, and the statute's history in reaching its holding that ". . . a publication or broadcast by a member of the news media to the general public regarding a private person is not privileged under section 47 (3) regardless of whether the communication pertains to a matter of public interest. [Fn. omitted.]" (*Id.* at pp. 721-756.) *Brown* recognized that the United States Supreme Court has forged a balance under the First Amendment between the competing social interests in public discussion and private reputation. "Society's interest in the value of a private persons reputation weighs against the judicial creation of a privilege (whether by construing a statute or the common law) that would impose burdens greater than those already required under the federal Constitution." (*Id.* at p. 746.) This same policy militates against *Abraham*'s extension of the litigation privilege beyond its statutory terms. After all, the statutory privilege is for statements made "in" judicial proceedings, not statements made "about" judicial proceedings.

■ *Abraham* also relied on the privilege provided by another part of Civil Code section 47, former subdivision 4, now subdivision (d), for "a fair and true report in a public journal, of (1) a judicial, (2) legislative, or (3) other public official proceeding, or (4) of anything said in the course thereof, or (5) of a verified charge or complaint made by any person to a public official, upon which complaint a warrant has been issued." By its own terms, this privilege applies only to reports *in public journals.* A statement "to" a public journal is not a statement "in" a public journal. While *Abraham* did not purport to literally apply the fair report privilege to the transmittal of pleadings to the press, *Abraham* invented a "bridge" privilege between privileged pleadings and a presumably privileged report which extended Civil Code section 47's privilege to the transmittal of pleadings to the press. This "bridge" privilege is an unwarranted extension of Civil Code section 47 beyond its terms. We do not accept *Abraham*'s conclusion that the absence of such an extension would defeat the statute's purposes. Except for fair reports in public journals, neither statutory privilege is designed to protect a party's statements about litigation to someone entirely unrelated to the litigation.

For all these reasons, we disagree with *Abraham*'s holding that a party's reports about litigation to the news media are privileged. We conclude that transmitting a facsimile copy of a complaint to a newspaper is not privileged under Civil Code section 47, former subdivisions 2 and 4.[3] Hence, the trial court did not err in overruling the demurrer on this basis. Therefore, petitioners have failed to establish a basis for extraordinary relief.

### Disposition

The petition for writ of mandate is denied.

Cottle, P. J., and Bamattre-Manoukian, J., concurred.

---

[3]We recognize that it may be difficult for cross-complainants to prove that what injured their reputations was Shahvar's conduct in transmitting a facsimile copy of the complaint rather than the Examiner's decision to publish an article. However, Shahvar's demurrer was based only on the Civil Code section 47 privileges discussed above.