Filed 2/5/14  Kirsch v. Redwood Recovery Services CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JEFFREY L. KIRSCH, | B247654 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC118444) |
| v. | |
| REDWOOD RECOVERY SERVICES, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  H. Chester Horn, Jr., Judge.  Affirmed.

Ronald D. Tym for Plaintiff and Appellant.

Wolf, Rifkin, Shapiro, Schulman & Rabkin and Marc E. Rohatiner; Levine Kellogg Lehman Schneider + Kellogg, Lawrence Kellogg and Amanda Star Frazer for Defendants and Respondents.

Plaintiff and appellant Jeffrey L. Kirsch (Kirsch) appeals from the judgment entered against him after the trial court granted a special motion to strike, pursuant to Code of Civil Procedure section 425.16,[1] all of the causes of action asserted against defendants and respondents Redwood Recovery Services, LLC (Redwood), Elevenhome Limited (Elevenhome), and Paul D. DeStefanis, P.A. (DeStefanis) (collectively, defendants) in this action for defamation, intentional interference with contract, and violation of Business and Professions Code section 17200.  We affirm the judgment.

## BACKGROUND

### Parties

Kirsch is a Florida attorney and the principal of ARE, a Miami-based company that was in the business of borrowing from foreign individuals for purposes of investing in pools of residential mortgage loans.  Redwood and ElevenHome are judgment creditors of Kirsch who obtained final judgments in the amount of approximately $17 million against Kirsch and certain business entities owned or controlled by him in two separate Florida state court actions.  DeStefanis is a principal and manager of Redwood and Elevenhome.

### Defendants' efforts to enforce the judgments

After the Florida judgments were entered, defendants had those judgments entered in California by filing applications for entry of sister-state judgment in the Los Angeles Superior Court.  California judgments based on the Florida sister-state judgments were entered in favor of Redwood and Elevenhome, respectively, on January 18 and January 31, 2012.

In September 2012, Redwood filed an action in Los Angeles Superior Court to set aside fraudulent conveyances of plaintiff's and the other judgment debtors' assets.  In an effort to prevent any further such conveyances, DeStefanis sent letters to persons he believed to have a close business relationship with plaintiff and the judgment debtors and

---

[1]     All further statutory references are to the Code of Civil Procedure, unless otherwise stated.  A special motion to strike is also referred as an anti-SLAPP motion.

2

who were likely recipients of further attempted fraudulent transfers. The letters advised the recipients that their assistance or participation in any attempts by plaintiff to avoid collection of the judgments would expose them to prompt legal action by and potential liability to Redwood and Elevenhome.

**The instant action and defendants' anti-SLAPP motion**

Plaintiff filed the instant action on September 20, 2012, alleging causes of action against defendants for defamation, intentional interference with contract, and violation of Business and Professions Code section 17200 for their publication and distribution of allegedly defamatory letters. Plaintiff attached as exhibits to his complaint two letters from DeStefanis. The first, dated August 7, 2012, was addressed to Ben Hecht and enclosed copies of the judgments entered against plaintiff. That letter advised and cautioned Hecht against assisting plaintiff in any attempts to avoid collection of the judgments. The second letter, dated September 17, 2012, was addressed to Pamela D. Perrot and referred to another letter sent several weeks ago informing Perrot of the Florida judgments and advising her against assisting plaintiff in avoiding payment of the judgments. The September 17, 2012 letter stated that "[t]o further explain the growing seriousness of [plaintiff's] default, we are enclosing a document that has recently been made part of a public court record that is developing as [plaintiff] responds to efforts being made for his compliance." The enclosed document was a copy of plaintiff's deposition transcript in one of the Florida actions. DeStefanis's letter explained that during the deposition, plaintiff refused to answer several questions, invoking his Fifth Amendment right against self-incrimination.

On December 5, 2012, defendants filed an anti-SLAPP motion in which they argued that all of the causes of action asserted against them arose out of their constitutionally protected right to redress of grievances. Defendants further argued that all of plaintiff's claims were barred by the litigation privilege accorded by Civil Code section 47, subdivision (b). Defendants' anti-SLAPP motion was set to be heard on January 24, 2013.

3

On January 8, 2013, plaintiff filed a first amended complaint which changed many of the allegations contained in the original complaint and which added a cause of action for invasion of privacy. Plaintiff also filed an opposition to the anti-SLAPP motion, in which he argued, among other things, that the filing of the first amended complaint rendered the anti-SLAPP motion moot.

At the January 24, 2013 hearing, the trial court ruled that plaintiff's original complaint was the operative pleading against which the anti-SLAPP motion would be considered and that the filing of the first amended complaint did not render the anti-SLAPP motion moot. The trial court granted defendants' anti-SLAPP motion and took the demurrer off calendar as moot. The court on its own motion struck the first amended complaint and dismissed it with prejudice.

Judgment was subsequently entered in defendants' favor awarding them $26,000 in attorney fees and $2,118.70 in costs. This appeal followed.

## DISCUSSION

### I. The first amended complaint did not moot the anti-SLAPP motion

Plaintiff contends he had a statutory right under section 472 to file a first amended complaint and that the filing of the amended pleading before the hearing on defendants' anti-SLAPP motion rendered that motion moot. This argument has been rejected by numerous appellate courts. (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1294 (*Salma*); *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049 (*Sylmar*); *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 772-773 (*Navellier*) [plaintiff cannot use "eleventh-hour amendment" to plead around an anti-SLAPP motion]; accord, *PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1209-1210 [citing cases].)

In *Salma*, the cross-defendant filed an anti-SLAPP motion to strike certain causes of action from a cross-complaint. In response to the anti-SLAPP motion, and before the hearing on that motion, the cross-complainant amended the cross-complaint to revise those causes of action. (*Salma, supra*, 161 Cal.App.4th at pp. 1281-1282.) The trial court ruled that the anti-SLAPP motion was not mooted by the filing of the amended

4

cross-complaint, and the appellate court affirmed, relying on *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068 (*Simmons*).

In *Simmons*, the Court of Appeal noted that the anti-SLAPP statute made no provision for amendments and that the absence of such a provision was consistent with legislative policy: "In enacting the anti-SLAPP statute, the Legislature set up a mechanism through which complaints that arise from the exercise of free speech rights 'can be evaluated at an early stage of the litigation process' and resolved expeditiously. [Citation.] . . . [¶] Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy. Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading. . . . [¶] This would totally frustrate the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing such suits. [Citation.]" (*Simmons, supra*, 92 Cal.App.4th at pp. 1073-1074.)

Although *Simmons* involved the propriety of the plaintiff's amendment after the trial court had found that a prima facie showing had been made under section 425.16, the appellate court in *Salma* applied the *Simmons* court's rationale to support "automatic dismissal" of the amended claims, reasoning as follows: "Requiring the trial court to analyze the amended claims under section 425.16 simply because the claims were amended before the court ruled on the first motion to strike would cause all of the evils identified in *Simmons* and would undermine the legislative policy of early evaluation and expeditious resolution of claims arising from protected activity." (*Salma, supra*, 161 Cal.App.4th at p. 1294.)

*Sylmar* involved an amended cross-complaint filed three days before the hearing on a demurrer and an anti-SLAPP motion directed against the cross-complainant's fraud cause of action. (*Sylmar, supra*, 122 Cal.App.4th at p. 1053.) The trial court granted the anti-SLAPP motion, struck the fraud cause of action in the original complaint, awarded

attorney fees and costs, and took the demurrer off calendar as moot. (*Ibid.*) On appeal, the cross-complainant argued that the filing of its amended cross-complaint was a matter of right under section 472, and that the trial court should not have ruled on the anti-SLAPP motion and awarded attorney fees against it. (*Id.* at p. 1054.) The Court of Appeal rejected that argument, applying the *Simmons* court's reasoning and holding that appellant could not avoid liability for attorney fees by filing an amended cross-complaint. (*Sylmar*, at pp. 1055-1056.)

Plaintiff argues that the court in *Law Offices of Andrew L. Ellis v. Yang* (2009) 178 Cal.App.4th 869 (*Yang*) limited the application of *Sylmar* to cases in which an amended pleading is filed after the trial court's determination that a prima facie case under the anti-SLAPP statute has been made. He cites the following language in *Yang* to support this argument:

> "*Sylmar* . . . cited, quoted, and discussed *Simmons v. Allstate Ins. Co., supra*, 92 Cal.App.4th 1068. Although *Sylmar* quoted directly from *Simmons*, it also overstated the rule derived therefrom. This language is critical. *Simmons* did not hold that parties lose their right to amend a pleading upon the filing an anti-SLAPP motion by the opposition. Rather, *Simmons* stated that parties lose that right *after a court has made an adverse* ruling by finding the moving party met its burden of proof and finding a prima facie showing has been made."

(*Yang, supra*, 178 Cal.App.4th at p. 881.)

The court in *Yang* did not purport to limit the application of *Sylmar*, nor did it address the holding in *Salma*.[2] *Yang* involved dismissal of a complaint while an anti-SLAPP motion was pending, not an amendment to avoid an anti-SLAPP motion. (*Yang, supra*, 178 Cal.App.4th at p. 876.) "'[I]t is axiomatic that cases are not authority for

---

[2] Plaintiff cites *Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450 as a case that is critical of *Salma*. The *Hecimovich* court's criticism, however, is directed at an entirely different issue -- whether verified pleadings may be used to show probability of success on the merits. (*Hecimovich*, at p. 474, fn. 8.) Moreover, the plaintiff in *Hecimovich* conceded that despite the filing of an amended complaint, the original complaint was the relevant pleading for purposes of ruling on the anti-SLAPP motion. (*Id.* at p. 465.)

propositions not considered. [Citations.]' [Citation.]" (*Gomez v. Superior Court* (2005) 35 Cal.4th 1125, 1153.)

We find the courts' reasoning in *Sylmar* and *Salma* to be persuasive and apply it here. Plaintiff's filing of a first amended complaint did not render defendants' anti-SLAPP motion moot. The trial court did not err by ruling on the anti-SLAPP motion directed at plaintiff's original complaint and by striking the first amended complaint.

## II. Anti-SLAPP motion

### A. *Applicable law and standard of review*

Section 425.16 was enacted "to provide for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. [Citation.]" (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315 (*Club Members*).) As relevant here, subdivision (b)(1) of section 425.16 provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Determining whether section 425.16 bars a given cause of action requires a two-step analysis. (*Navellier, supra*, 29 Cal.4th at p. 88.) First, the court must decide whether the party moving to strike a cause of action has made a threshold showing that the cause of action "aris[es] from any act . . . in furtherance of the [moving party's] right of petition or free speech." (§ 425.16, subd. (b)(1); *Navellier, supra*, at p. 88.) "'A cause of action "arising from" [a] defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike.' [Citations.] 'Any act' includes communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 (*Rusheen*).) The scope of the statute is broad. In authorizing the filing of a special motion to strike, the Legislature

7

"expressly provided that section 425.16 should 'be construed broadly.' [Citations.]" (*Club Members, supra*, 45 Cal.4th at p. 315.)

If the court finds that a defendant has made the requisite threshold showing, the burden then shifts to the plaintiff to demonstrate a "probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); *Navellier, supra*, 29 Cal.4th at p. 88.) In order to demonstrate a probability of prevailing, a party opposing a special motion to strike under section 425.16 """"must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."" [Citation.]" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741, fn. omitted.) "'The plaintiff's showing of facts must consist of evidence that would be admissible at trial. [Citation.]'" (*Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 679.) "[D]eclarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded. [Citation.]" (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26.)

A trial court's order granting a special motion to strike under section 425.16 is reviewed de novo. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999.)

### B. Protected activity/litigation privilege

Section 425.16 protects statements made in connection with an issue pending before a legislative, executive or judicial body. Subdivision (e)(1) of section 425.16 covers "any written or oral statement or writing made before a legislative, executive or judicial proceeding, or any other official proceeding authorized by law." Subdivision (e)(2) protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other official proceeding authorized by law."

8

The California Supreme Court has held that "'communications . . . within the protection of the litigation privilege of Civil Code section 47, subdivision (b)[3] [citation], . . . are equally entitled to the benefits of section 425.16.' [Citations.]" (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115.) "Under the 'usual formulation,' the litigation 'privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]' [Citation.] This includes prelitigation communications involving the subject matter of the ultimate litigation. [Citations.]" (*Sylmar, supra*, 122 Cal.App.4th at p. 1058; *Rubin v. Green* (1993) 4 Cal.4th 1187, 1191.) The privilege includes statements concerning litigation threatened in the event a demand is not met. (*Aronson v. Kinsella* (1997) 58 Cal.App.4th 254, 260-261.) The privilege also encompasses statements made to third parties who have a substantial interest in the outcome of the litigation. (*Costa v. Superior Court* (1984) 157 Cal.App.3d 673, 678.) Thus, "[s]tatements made in connection with or in preparation of litigation are subject to section 425.16. [Citation.]" (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.) Whether a given communication is within the scope of the litigation privilege, and hence, protected by section 425.16, is a question of law that we review de novo. (See *Nguyen v. Proton Technologies Corp.* (1999) 69 Cal.App.4th 140, 147.)

The second and third causes of action[4] in plaintiff's original complaint are based on statements made in two letters regarding the Florida judgments entered against plaintiff and defendants' efforts to collect on those judgments. The letters were sent to

---

**3** Subject to certain enumerated exceptions, Civil Code section 47, subdivision (b) states that a publication or broadcast is privileged if made "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure . . . ."

**4** Plaintiff does not challenge the trial court's ruling granting the motion to strike the first cause of action (for defamation) in his original complaint.

people whom defendants believed were likely recipients of fraudulent transfers by plaintiff in order to avoid defendants' collection efforts.

The August 7, 2012 letter states that its purpose "is to advise and caution family members and their associates that if they participate with or assist Mr. Kirsch in any attempts to avoid collection of the judgments, they will expose themselves individually to potential liability for attempting to deprive the judgment creditors of their rights to collect the judgments from the assets of Mr. Kirsch." The September 17, 2012 letter encloses a transcript of plaintiff's deposition taken in one of the Florida actions and at which plaintiff invoked his Fifth Amendment right against self-incrimination in an effort "[t]o further explain the growing seriousness of [plaintiff's] default."

Plaintiff's second cause of action alleges that by sending the September 17, 2012 letter, defendants "wrongfully, intentionally and willfully interfered with" plaintiff's "actual and prospective contractual, business and/or employment relationships" with the recipients of those letters. The third cause of action alleges that defendants' conduct in sending the September 17, 2012 letter was defamatory and an unfair and fraudulent business practice in violation of Business and Professions Code section 17200. Both of these causes of action are based on prelitigation statements protected under section 425.16, subdivisions (e)(1) or (e)(2). The statements concerned defendants' efforts to collect on judgments entered in the Florida actions; they were made to third parties with a substantial interest in the outcome of those actions; and they were made for the purpose of avoiding future litigation against those third parties, who were also potential recipients of fraudulent transfers by plaintiff. (*Sylmar, supra*, 122 Cal.App.4th at p. 1058; *Costa v. Superior Court, supra,* 157 Cal.App.3d at p. 678.) They are thus covered under section 425.16. (*Kashian v. Harriman, supra*, 98 Cal.App.4th at p. 908.)

Plaintiff argues for the first time on appeal that the September 17, 2012 letter was not a protected communication under section 425.16 because it disclosed his invocation

10

of his Fifth Amendment right, in violation of Evidence Code section 913.[5]  Plaintiff did not raise this argument in the trial court below and accordingly forfeited the right to do so for the first time in this appeal.  "It is well established that issues or theories not properly raised or presented in the trial court may not be asserted on appeal, and will not be considered by an appellate tribunal." (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 117.)

### C. *Probability of prevailing*

Because defendants' prelitigation communications were protected under the anti-SLAPP statute, we now determine whether plaintiff met his burden of demonstrating a probability of prevailing on his causes of action.  To do so, plaintiff was required to present evidence showing he could establish a prima facie case at trial. (*Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1496.)  He failed to do so.

Plaintiff's second cause of action is for intentional interference with economic relationships.  The elements of such a cause of action are:  "'"(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." [Citations.]' [Citation.]" (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153 (*Korea Supply*).)  To satisfy the plaintiff's burden as to the third element, "a plaintiff must plead and prove that the defendant's acts

---

**5**     Evidence Code section 913 states:  "(a) If in the instant proceeding or on a prior occasion a privilege is or was exercised not to testify with respect to any matter, or to refuse to disclose or to prevent another from disclosing any matter, neither the presiding officer nor counsel may comment thereon, no presumption shall arise because of the exercise of the privilege, and the trier of fact may not draw any inference therefrom as to the credibility of the witness or as to any matter at issue in the proceeding.  [¶]  (b) The court, at the request of a party who may be adversely affected because an unfavorable inference may be drawn by the jury because a privilege has been exercised, shall instruct the jury that no presumption arises because of the exercise of the privilege and that the jury may not draw any inference therefrom as to the credibility of the witness or as to any matter at issue in the proceeding."

11

are wrongful apart from the interference itself." (*Id.* at p. 1154.) "To establish a claim for interference with prospective economic advantage, therefore, a plaintiff must plead that the defendant engaged in an independently wrongful act. [Citation.] An act is not independently wrongful merely because defendant acted with an improper motive. . . . The tort of intentional interference with prospective economic advantage is not intended to punish individuals or commercial entities for their choice of commercial relationships or their pursuit of commercial objectives, unless their interference amounts to independently actionable conduct. . . . [A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard. [Citations.]" (*Id.* at pp. 1158-1159, fn. omitted.)

As evidentiary support for his claim of intentional interference with prospective economic advantage, plaintiff submitted his own declaration attesting to the existence of his business relationships with the recipients of the September 17, 2012 letters and the disruption of those relationships after the letters were received. Plaintiff presented no evidence that defendants engaged in an independently wrongful act (see *Korea Supply, supra*, 29 Cal.4th at p. 1154), nor could he, as a communication covered by the litigation privilege "is absolutely immune from any tort liability if it has '"some relation"' to judicial proceedings. [Citation.]" (*Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th 1, 5.)

The same is true with regard to plaintiff's third cause of action for violation of Business and Professions Code section 17200. To state a claim under unfair competition law, plaintiff must establish that defendants' conduct was unlawful (forbidden by law), unfair (the harm to the victim outweighs its benefits), or fraudulent (members of the public are likely to be deceived). (*Olsen v. Breeze, Inc.* (1996) 48 Cal.App.4th 608, 617-618.) Plaintiff presented no evidence establishing that the September 17, 2012 letter was unlawful, unfair, or fraudulent. He accordingly failed to demonstrate a probability of prevailing on his claims. The anti-SLAPP motion was properly granted.

12

## DISPOSITION

The judgment is affirmed.  Defendants are awarded their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
CHAVEZ

We concur:

_____, P. J.
BOREN

_____, J.*
FERNS

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.